[No. S055775. Aug. 7, 1997.]

RICHARD LAKE, Plaintiff and Appellant, v.
SALLY R. REED, as Director, etc., Defendant and Respondent.

**COUNSEL**

John A. W. Halley for Plaintiff and Appellant.

Barry T. Simons, K. Randolph Moore and Ed Kuwatch as Amici Curiae on behalf of Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Martin H. Milas, Assistant Attorney General, Robert R. Buell, Christine B. Mersten and Heidi T. Salerno, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**WERDEGAR, J.**—A person who operates a motor vehicle while intoxicated is subject to criminal prosecution and penalties. Prior to the criminal trial, however, the Department of Motor Vehicles (hereafter DMV or the department) must suspend the individual's driver's license as an administrative matter if it determines the person was driving a motor vehicle with a blood-alcohol concentration (hereafter sometimes BAC) of .08 percent or higher. (Veh. Code, § 13353.2, subd. (a)(1); all further statutory references are to the Vehicle Code unless otherwise stated.) In those cases where the individual requests an administrative hearing, whether he or she was driving with a prohibited BAC is often proved by the introduction into evidence of the arresting police officer's sworn report describing the circumstances of the arrest, together with the results of a breath test administered by the officer. If the driver chose instead to have a blood or urine test, the driver's BAC is usually established at the hearing by introduction of a forensic laboratory report documenting the results of a scientific analysis of the blood or urine sample.

We granted review in this case to address two issues: first, whether, in an "administrative per se" review hearing, the DMV presents sufficient evidence to show the individual arrested was driving the motor vehicle, when

the only evidence that satisfies an exception to the hearsay rule is contained in an unsworn police report, and, second, whether the DMV presents sufficient evidence to show the person driving did so with a prohibited BAC, when the only evidence is an unsworn forensic laboratory report documenting the results of a chemical test of the driver's urine.

As explained below, we answer both questions in the affirmative.

## FACTS

According to the sworn police report filed by Officer Dickerson of the San Carlos Police Department, as supplemented by an unsworn incident report filed by Officer King, also a San Carlos police officer, and two unsworn witness statements, plaintiff Richard Lake (hereafter Lake) was driving westbound on Belle Avenue in the City of San Carlos on Friday, July 15, 1994, when he approached the intersection of Belle and Cordilleras Avenue. The intersection is governed by stop signs on all four sides. Cheryl Morin was traveling south on Cordilleras. Morin stopped at the intersection before Lake's car. Then, believing she had the right of way, Morin entered the intersection, where she was struck by the car driven by Lake. The impact spun Morin's car around 180 degrees, inflicting moderate damage to the car. In addition, Morin complained of pain in her left shoulder and neck as a result of the collision.

Lake attempted to drive off, but was persuaded to stop by witnesses, including Morin, who yelled at him to stop. Officer Dickerson and then Officer King responded to the scene and interviewed both drivers and two witnesses: Tamera Heck, a pedestrian, and James Wilton, a friend of Lake's who had been following him in his own car. According to Dickerson's report, Lake exhibited several manifestations of alcohol intoxication, including bloodshot or watery eyes, the odor of alcoholic beverages, an unsteady gait and slurred speech. Officer King's report stated Lake told him that he was driving and that he had stopped at the stop sign and had then proceeded into the intersection, where he hit Morin's car. Wilton confirmed Lake was driving and that he had come to a complete stop before proceeding into the intersection. Officer King concluded, however, that, due to Lake's intoxication, he had failed to yield the right of way, causing the accident.

Officer Dickerson arrested Lake on suspicion of driving under the influence of alcohol. Given the choice of submitting a blood, breath or urine sample (§ 23157), Lake submitted a urine sample. Dickerson took physical possession of Lake's driver's license and issued him an "Administrative Per Se Order of Suspension/Revocation Temporary License Endorsement,"

DMV form DS 360, which served as a temporary driver's license for 30 days.

Lake exercised his statutory rights and requested a hearing. (§ 13558.) He did not personally attend the hearing, but listened to the proceedings by telephone. He was, however, represented at the hearing by counsel. Lake's counsel explained that, in light of the pending criminal trial stemming from the same accident, his client would not be testifying, but would instead invoke his right against compelled self-incrimination pursuant to the Fifth Amendment to the United States Constitution.

The DMV introduced into evidence Officer Dickerson's sworn police report on DMV form DS 367. Lake objected to introduction of Dickerson's report on the grounds it contained inadmissible hearsay. The DMV also introduced Officer King's unsworn report. Lake objected to King's report because it was an unauthenticated photocopy of the original, it was unsworn, and it contained hearsay. Lake made the same three objections to the unsworn statements of witness Tamera Heck and victim Cheryl Morin, which were attached to King's report. The hearing officer overruled all of Lake's objections.

Finally, to establish Lake's blood-alcohol concentration, the DMV introduced two documents. First, the DMV introduced an "Alcohol Analysis Report" from the forensic laboratory of the San Mateo Sheriff's Office. The report indicated an analyst named Nicholas Stumbaugh tested Lake's urine sample and found it contained .19 percent blood alcohol. Lake objected to the introduction of this report because it was an unauthenticated photocopy of the original report, it was not prepared on a form "furnished or approved by the department" (§ 23158.2, subd. b)), and the certification was defective, rendering the report unsworn. The hearing officer overruled these objections.

The DMV also introduced a DMV form DS 367A, entitled "Supplement to Officer's Statement [/] Blood/Urine Test Results." The top half of this form, designated "Chemical Test Request [/] Law Enforcement Use Only," indicated Lake requested his urine be tested and is signed by Officer Dickerson. The bottom half of this form, designated "Chemical Test Results [/] Laboratory Use Only," indicates the laboratory name, the analyst's name, and the test results (.19 percent BAC). Although the form has a statement of certification and a space for a signature, this part is not filled out. Instead, there is a handwritten notation stating "Please see attached" (presumably referring to the Alcohol Analysis Report). Lake objected to the introduction of this form on grounds it was hearsay and was unsworn, i.e., "it is not executed under oath and [on] grounds that there's no showing that the person

that prepared that entry actually had personal knowledge of the [test] results." The hearing officer also overruled these objections.

The hearing officer upheld the suspension of Lake's driver's license. Lake sought a writ of mandate in the trial court, but his petition was denied. The Court of Appeal affirmed; we granted Lake's petition for review.

DISCUSSION

## A. *Introduction*

■ At issue here is the statutory procedure (see § 13353.2 et seq.), often called the "administrative per se" law,[1] under which a person arrested for driving under the influence of alcohol, and who is determined to have a prohibited amount of alcohol in his or her blood, must have driving privileges suspended prior to an actual conviction for a criminal offense. We confronted this scheme most recently in *Gikas* v. *Zolin* (1993) 6 Cal.4th 841 [25 Cal.Rptr.2d 500, 863 P.2d 745] (hereafter *Gikas*); we there explained that "[t]he express legislative purposes of the administrative suspension procedure are: (1) to provide safety to persons using the highways by quickly suspending the driving privilege of persons who drive with excessive blood-alcohol levels; (2) to guard against erroneous deprivation by providing a prompt administrative review of the suspension; and (3) to place no restriction on the ability of a prosecutor to pursue related criminal actions. [Citations.]" (*Id.* at p. 847.)

As we further explained in *Gikas*, *supra*, 6 Cal.4th at page 847, the administrative per se laws were deemed necessary due to the time lag that often occurs between an arrest and a conviction for driving while intoxicated or with a prohibited BAC. During this interim period, arrestees who could eventually be convicted of an intoxication-related driving offense were permitted to continue driving and, possibly, endangering the public thereby. Moreover, without administrative per se laws, persons with extremely high

---

[1]The term "administrative per se" on its face seems obscure and devoid of discernible meaning. (See Mellinkoff, The Language of the Law (1963) Preface, p. vii ["To be of any use, the language of the law . . . must not only express but convey thought. With communication the object, the principle of simplicity would dictate that the language used by lawyers agree with the common speech, unless there are reasons for a difference."].) No doubt the term finds its origins in the so-called "illegal per se" laws in which criminal penalties would attach to a person who drives at or above a statutorily established BAC, without additional evidence of actual intoxication or impaired driving ability. Because the statutory scheme under scrutiny in this case would not impose criminal penalties, but simply suspends or revokes a person's driver's license as an administrative matter upon a showing the person was arrested for driving with a certain BAC, without additional evidence of impairment, the procedure has been called "administrative per se."

BAC levels at the time of arrest could escape license suspension or revocation by plea bargaining to lesser crimes or entering pretrial diversion. Thus, by providing for an administrative license suspension prior to the criminal proceeding, the law affords the public added protection.[2]

Under administrative per se laws, "when a person is arrested for driving under the influence and is determined to have a prohibited blood-alcohol level, the arresting officer or the DMV serves the person with a 'notice of the order of suspension.' (§§ 13353.2, subds. (b) & (c), 23158.5, subds. (a) & (b).) The notice informs the person that his or her driver's license will be suspended [30] days from the date of service, states the reason and statutory grounds for the suspension, and explains the person's right to seek an administrative hearing. (§§ 13353.2, subd. (c), 13353.3, subd. (a).) If the arresting officer serves the notice, the officer also confiscates the person's driver's license[3] and issues a [30-day] temporary license. (§ 23158.5, subd. (b)[; see also § 23157, subd. (f)].)" (*Gikas, supra,* 6 Cal.4th at p. 846.)[4]

■ After either the arresting officer or the DMV serves a person with a "notice of an order of suspension or revocation of the person's [driver's license]," the DMV automatically reviews the merits of the suspension or revocation. (§ 13557, subd. (a).) The standard of review is preponderance of the evidence (*id.,* subd. (b)(2)), and the department bears the burden of proof (*Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536 [189 Cal.Rptr. 512, 658 P.2d 1313]; *Burge* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 384, 388 [7 Cal.Rptr.2d 5]). For drivers 21 years of

---

[2]"The need for the administrative per se statutes arose from the fact that '[t]he legal process leading to imposition of a suspension sometimes [took] years from the time of arrest.' (Health & Welf. Agency, Dept. of Alcohol & Drug Programs, Enrolled Bill Rep. for Sen. Bill No. 1623 (1989-1990 Reg. Sess.) Sept. 1989.) 'Many drivers with high chemical test results fail[ed] to have sanctions taken against their driving privilege because of reduction in charges as the result of "plea-bargaining" or pre-trial diversion programs.' (CHP Enrolled Bill Rep. for Sen. Bill No. 1623 (1989-1990 Reg. Sess.) Sept. 1989, p. 4.) In enacting the administrative per se law, *the Legislature intended to establish 'an expedited driver's license suspension system'* (Sen. Bill No. 1623, 3d reading Sept. 13, 1989, p. 1; see 1 Sen. Final Hist. (1989-1990 Reg. Sess.) p. 1092) that would 'reduce court delays. The suspension will be swift and certain and will be more effective as a deterrent. . . .' (Bus., Transportation & Housing Agency, Office of Traffic Safety, Enrolled Bill Rep. for Sen. Bill No. 1623 (1989-1990 Reg. Sess.) Sept. 1989, p. 2.)" (*Bell* v. *Department of Motor Vehicles* (1992) 11 Cal.App.4th 304, 312 [13 Cal.Rptr.2d 830], italics added.)

[3]Because, under the administrative per se statutes, the arresting officer actually takes physical possession of the arrestee's driver's license, practitioners colloquially refer to this procedure as "Stop and Snatch." (See 2 Kuwatch, Cal. Drunk Driving Law (Sept. 1996), p. 11-2; Note, *Put Down That Drink!: The Double Jeopardy Drunk Driving Defense Is Not Going to Save You* (1996) 81 Iowa L.Rev. 775, 780, fn. 26.)

[4]The facts of *Gikas* arose in 1990. Since that case arose, the Legislature has shortened the relevant period from 45 to 30 days. (Compare Stats. 1992, ch. 1281, § 5 [45-day period applicable until July 1, 1993] with *id.,* § 6 [30-day period applicable beginning July 1, 1993].)

age and older, the sole issues are whether: "(A) . . . the peace officer had reasonable cause to believe that the person had been driving a motor vehicle in violation of Section . . . 23152[] or 23153. [¶] (B) . . . the person was placed under arrest . . . . [and] [¶] (C) . . . the person was driving . . . [¶] [w]hen the person had 0.08 percent or more, by weight, of alcohol in his or her blood." (§ 13557, subd. (b)(2).)[5]

The DMV is required to make its determination prior to "the effective date of the suspension or revocation" (§ 13557, subd. (c)), although the department may dispense with such automatic review if the driver requests a hearing (§ 13557, subd. (e)). The determination of facts by the DMV in its automatic internal administrative review has no collateral estoppel effect in a subsequent criminal proceeding. (§ 13557, subd. (f); cf. *Gikas, supra,* 6 Cal.4th 841 [determination in criminal prosecution that person was illegally arrested has no collateral estoppel effect in later administrative hearing].)

A driver served with a DMV suspension notice is entitled to a hearing on request. (§ 13558, subd. (a); see § 14100, subd. (c) [right to request hearing "shall be made prominent on the notice" of suspension or revocation].) The administrative hearing is held before either the director of the DMV, a hearing board or, more usually, a department hearing officer (§ 14104.2, subd. (a)). "The only issues at the hearing on an order of suspension pursuant to Section 13353.2 shall be those facts listed in paragraph (2) of subdivision (b) of Section 13557" (§ 13558, subd. (c)(2)), that is, whether the arresting officer had reasonable cause to believe the person was driving, the driver was arrested, and the person was driving with .08 percent BAC or higher.

If the hearing officer finds the evidence proves these three statutory prerequisites by a preponderance of the evidence, the driver's license to operate a motor vehicle will, with exceptions not relevant here, be suspended for four months if the driver had a clean driving record (§ 13353.3, subd. (b)(1)). For persons with a prior drunk driving conviction (or a conviction for driving with a prohibited BAC) within the previous seven years, "the person's privilege to operate a motor vehicle shall be suspended for one year." (§ 13353.3, subd. (b)(2).)

In ruling on an application for a writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, " 'whether the weight of the evidence supported the administrative decision.' " (*Gananian* v. *Zolin* (1995) 33 Cal.App.4th

---

[5]Different BAC levels apply to those under 21 years of age. (§ 13557, subd. (b)(2)(C)(ii)-(iii).) Our discussion assumes the arrested driver is 21 or older.

634, 638 [39 Cal.Rptr.2d 384] (hereafter *Gananian*), quoting *Yordamlis* v. *Zolin* (1992) 11 Cal.App.4th 655, 659 [14 Cal.Rptr.2d 225].) Here, as noted above, the trial court denied the writ. On appeal, we "need only review the record to determine whether the trial court's findings are supported by substantial evidence." (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242].) " 'We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. [Citation.]' " (*Gananian, supra,* 33 Cal.App.4th at p. 638, quoting *Yordamlis* v. *Zolin, supra,* 11 Cal.App.4th at p. 659.)

 Lake contends the evidence admitted in the hearing was insufficient to prove either that he was driving or that his blood-alcohol concentration was .08 percent or higher. In particular, he attacks the DMV's reliance on unsworn police and forensic laboratory reports. Because proof of these two factors (driving and BAC) implicate somewhat different statutes, we address the two issues separately.

### B. *Evidence That Lake Was Driving*

#### 1. *The Applicable Law*

When the DMV conducts its automatic internal review of an order of suspension, it "shall consider *the sworn report* submitted by the peace officer pursuant to Section 23157 or 23158.2 *and any other evidence accompanying the report*." (§ 13557, subd. (a), italics added.) Section 23158.2, subdivision (a) (hereafter section 23158.2(a)), referred to in section 13557, provides in pertinent part that if a peace officer arrests a person on suspicion of driving while intoxicated or with a BAC of .08 percent or higher, "the peace officer shall immediately forward to the department *a sworn report* of all information relevant to the enforcement action, *including* information which adequately identifies the person, a statement of the officer's grounds for belief that the person violated Section . . . 23152[] or 23153, a report of the results of any chemical tests which were conducted on the person . . . , a copy of any notice to appear under which the person was released from custody, and, if immediately available, a copy of the complaint filed with the court." (Italics added.)

"The peace officer's sworn report shall be made on forms furnished or approved by the department." (§ 23158.2, subd. (b).) Officer Dickerson filed such a report on DMV form DS 367.

If the driver, as here, requests a hearing, the universe of potentially available evidence is enlarged, for "[a]ny evidence at the hearing shall not be limited to the evidence presented at an administrative review pursuant to Section 13557." (§ 13558, subd. (b).) The rules potentially governing the evidence available for use in such hearings are set forth in division 6, chapter 3, article 3 of the Vehicle Code, commencing with section 14100. (§ 14100, subd. (a).) Two provisions are especially relevant. First, section 14104.7 states in pertinent part: "At any hearing, the department shall consider its official records and may receive *sworn testimony*." (Italics added.) Second, for all matters not specifically covered by division 6, chapter 3, article 3 of the Vehicle Code, section 14112 incorporates the provisions of the Administrative Procedures Act governing administrative hearings generally. (Gov. Code, § 11500 et seq.; see also, *id.*, § 11501, subd. (b)(41) [Administrative Procedures Act applies to DMV].)

Government Code section 11513, subdivision (c), addresses the admissibility of evidence generally in administrative hearings. It states: "The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions. Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions."

The DMV, in attempting to prove by a preponderance of the evidence that Lake was driving his car with a prohibited BAC (§ 13557, subd. (b)(2)(C)(i)), was thus constrained by the foregoing statutory provisions, to the extent applicable.[6]

### 2. *Discussion*

 The DMV offered two pieces of evidence to prove Lake was driving: (i) Officer Dickerson's sworn police report, forwarded to the DMV as required by section 23158.2(a); and (ii) Officer King's unsworn report, which reported Lake's admission to him that he was driving, as well as the statement of witness Wilton, who also stated Lake was driving. In addition,

---

[6]It does not appear Lake is challenging the fact Officer Dickerson *had reasonable cause to believe* Lake had been driving. (§ 13557, subd. (b)(2)(A).) In any event, as discussed, *post,* the hearsay accounts of eyewitnesses indicating Lake was the driver were admissible in the administrative hearing and, together with the other evidence, were legally sufficient to prove Dickerson had reasonable cause to believe Lake was the driver.

attached to King's report were the unsworn statements of Morin and Heck. As the Court of Appeal held below, because Officer Dickerson did not personally observe Lake behind the wheel of the car, Dickerson's police report, while sworn, merely reported the observations of "the other party involved in the collision" (Morin), as well as "2 independant [*sic*] witnesses" (presumably Heck and Wilton). On the question, therefore, of whether Lake was driving, Dickerson's report provided hearsay evidence only and thus runs afoul of the restriction that hearsay evidence "may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient *in itself* to support a finding unless it would be admissible over objection in civil actions." (Gov. Code, § 11513, subd. (c), italics added.) Accordingly, we must determine whether Officer King's report constituted admissible evidence that Lake was driving, in which case Dickerson's report, though hearsay, could properly be used to "supplement[] or explain[]" King's report.

Officer King responded to the scene of the accident and interviewed both Lake and witness Wilton. Both men informed King that Lake had been driving at the time of the accident. Officer King included these statements in his report, which he thereafter forwarded to the DMV. Lake contends Officer King's report was inadmissible and could not be used to prove he was driving because it was not sworn. We disagree.

Section 23158.2(a) requires *the arresting officer* to "immediately forward" a sworn report to the DMV of "all information relevant to the enforcement action." The section goes on to state that such information shall include "information which adequately identifies the person, a statement of the officer's grounds for belief that the person violated Section . . . 23152[] or 23153, a report of the results of any chemical tests which were conducted on the person . . . , a copy of any notice to appear under which the person was released from custody, and, if immediately available, a copy of the complaint filed with the court."

Officer King was not the arresting officer; thus, nothing in section 23158.2 prohibits him from sending his traffic collision and other incident reports, although unsworn, to the DMV for the department's consideration. Indeed, the statutory scheme contemplates the DMV will consider evidence other than the sworn section 23158.2(a) report filed by the arresting officer, for section 13557, subdivision (a), states that the DMV, when conducting its automatic internal review of a license suspension, "shall consider the sworn report submitted by the peace officer pursuant to Section . . . 23158.2 *and any other evidence accompanying the report.*" (Italics added.)

Lake argues permitting consideration of Officer King's unsworn police report improperly evades the requirement, set forth in section 23158.2(a), of

a "sworn report." This argument ignores the precise language of the section cited, which requires a sworn report be filed only by the "peace officer [who] . . . arrests any person for a violation of Section . . . 23152[] or 23153 . . . ." Officer Dickerson complied with this statutory directive. Officer King was merely assisting Dickerson; nothing in the record indicates King arrested Lake. So long as the arresting officer files a sworn report, we see nothing in section 23158.2 that specifically precludes consideration of other, unsworn police reports.

Although section 13557, subdivision (a), contemplates the DMV will consider "any other evidence accompanying the report," Lake contends that provision governs only the DMV's *automatic internal* review of license suspensions and is thus irrelevant to whether such evidence is available in a *contested review hearing*. We disagree; if anything, the statutory scheme contemplates even more evidence will be available in a contested review hearing as compared to the department's automatic internal review process. Section 13558, subdivision (b), provides "[a]ny evidence at the hearing *shall not be limited* to the evidence presented at an administrative review pursuant to Section 13557." (Italics added.) We conclude that permitting the department's hearing officer to consider and rely on Officer King's unsworn police report does not unfairly evade the requirement of section 23158.2(a) that the arresting officer file a sworn report.

Lake, however, contends section 14104.7 permits the hearing officer to consider evidence only if it is sworn. That section provides "the department shall consider its official records and may receive sworn testimony." We agree with Lake that Officer King's unsworn report cannot be characterized as part of the DMV's official record: no statute required that it be filed; it is not on an approved DMV form; and, of course, it is not sworn. As Officer King did not testify at the hearing, neither can the report be described as "sworn testimony." It would appear, then, that King's report does not strictly fall within any category of evidence specifically set forth in section 14104.7.

The flaw in Lake's argument, however, is his assumption that section 14104.7 addresses the entire universe of permissible evidence that may be adduced at an administrative per se review hearing.[7] It does not. Rather, if a type of evidence is not addressed in section 14104.7, we must return to the default provisions of section 14112, which direct our attention to Government Code section 11513, subdivision (c). Under Government Code section 11513, subdivision (c), "[a]ny relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the

---

[7]Section 14104.7 goes on to describe other types of admissible evidence, such as reports of medical personnel, not relevant to the instant inquiry.

conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." A police officer's report, even if unsworn, constitutes "the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs." Accordingly, the DMV hearing officer did not err in admitting Officer King's report.

Although we conclude the lack of certification does not preclude the DMV hearing officer from admitting Officer King's report, that conclusion does not end our inquiry; we must still decide whether the evidence at the hearing was sufficient to support the hearing officer's decision Lake was driving at the time of the accident. Because, as previously indicated, Officer Dickerson's report contained only hearsay on the question and hearsay evidence is insufficient of itself to support a finding (Gov. Code, § 11513, subd. (c)), the answer turns on whether Officer King's report also was hearsay and, if so, whether an exception to the hearsay rule applies so as to permit its use to prove Lake was driving.

Preliminarily, we observe that Officer King's report itself, although hearsay, is excepted from the hearsay rule under the public employee records exception: King wrote the report within the scope of his duty as a public employee; the report was made near the time of the event in question; and the source of the information contained in the report—i.e., Officer King—and the method and time of preparation "were such as to indicate its trustworthiness." (Evid. Code, § 1280.) But, like Officer Dickerson, Officer King did not observe the accident. Thus, like Officer Dickerson's report, Officer King's report also provided only hearsay evidence on the question of whether Lake was driving. Here, however, the parallel ends, because contained in King's report, in addition to other statements, is Lake's admission he was driving. As a party admission, Lake's statement is excepted from the hearsay rule. (Evid. Code, § 1220.)

Wilton's statement to King, by contrast, does not fall within any hearsay exception. Nor do the statements of victim Cheryl Morin and eyewitness Tamera Heck, attached to King's report. All three statements, however, are admissible under Government Code section 11513, subdivision (c) to "supplement[] or explain[]" Lake's own admission.

In sum, we conclude Officer King's unsworn report was properly considered by the DMV hearing officer because: (i) the applicable statutes do not make certification of a nonarresting officer's report a condition of admissibility in the hearing; (ii) the report falls within the public employee records exception to the hearsay rule; and (iii) Lake's admission recounted therein

comes within the party admission exception to the rule. We further conclude the evidence was sufficient to support the hearing officer's finding Lake was driving because once King's report recounting Lake's admission was properly admitted, the other evidence (Dickerson's report and the statements of Wilton, Morin and Heck), though hearsay, could properly be used to explain and supplement that evidence.

Although our interpretation of the relevant statutes will render it easier for the DMV to sustain an administrative suspension of a person's driver's license, this result is consonant with the Legislature's intent in creating the statutory scheme. We reiterate that the administrative per se laws are intended to provide an efficient mechanism whereby those persons who drive after consuming dangerous amounts of alcohol can have their driver's licenses quickly suspended so as to ensure they will not endanger the public by continuing to drive. (*Gikas, supra,* 6 Cal.4th at p. 847.) One aspect of this accelerated procedure is a slight relaxation of the rules of evidence applicable to an administrative per se review hearing.

Of course, in a great number of cases, the arresting officer will have personally observed the arrestee driving in a manner suggestive of being intoxicated, and any question of hearsay or lack of personal knowledge will not materialize. In other cases, as here, where the officer in question did not view the driver behind the wheel of the car, we find it is consistent with the purposes of the administrative per se law to permit the DMV to consider both: (i) the sworn report of the peace officer who responded to the scene and arrested the person suspected of driving while intoxicated (or with an elevated BAC); as well as (ii) the unsworn report of any officer who, within the scope of the officer's official duty, wrote a report at or near the time of the accident under circumstances indicating trustworthiness of the sources of information and method of preparation. (Evid. Code, § 1280.)

Should arrestees facing suspension of their drivers' licenses have evidence they were not the person actually driving the motor vehicle in question, they are, of course, free to present this evidence at the hearing (§ 13558, subd. (b) [permissible evidence not limited to that presented in the automatic administrative review pursuant to § 13557]) in an attempt to convince the hearing officer the DMV has not carried its burden by a preponderance of the evidence. Live testimony must be sworn (§ 14104.7), and the subpoena power is available to ensure the attendance of witnesses and the production of documents (§ 14104.5). The person is entitled to administrative review of the hearing officer's decision (§ 14105.5) and, thereafter, judicial review by way of a writ in a court of competent jurisdiction (§ 13559, subd. (a)). An opportunity for an additional reevaluation of the license suspension is available if the driver is acquitted in a criminal trial, or if criminal charges are not

filed (or are dismissed) for insufficiency of evidence. (§ 13353.2, subd. (e).) In light of these procedural protections, we find the threat of an erroneous administrative determination minimal.

## C. *Evidence of Blood-alcohol Concentration*

In addition to proof Lake was the driver, the DMV was also required to prove Lake's BAC was .08 percent or higher at the time he was driving. (§ 13557, subd. (b)(2)(C)(i).) As noted above, the DMV hearing officer relied on a report from the San Mateo Sheriff's Office forensic laboratory showing Lake's BAC was .19 percent, well above the statutory limit. Lake contends this forensic report was inadmissible because it was not "sworn," that is, subscribed under penalty of perjury, with the date and place of subscription noted. (Code Civ. Proc., § 2015.5.) As we explain, the lower court correctly found there is no requirement, statutory or otherwise, that would condition admissibility of such a report on formal certification.[8]

Lake begins by relying on the actual language of section 23158.2(a), which requires in pertinent part that, after the arrest, "the peace officer shall immediately forward to the department *a sworn report of all information* relevant to the enforcement action, *including* . . . a report of the results of any chemical tests which were conducted on the person . . . ." (Italics added.) Lake argues the word "sworn," as used in the statute, modifies both the phrase "report of all information" as well as the phrase "a report of the results of any chemical tests."

We disagree. The plain meaning of the statutory language makes clear that, although *the peace officer's report* must be sworn, that sworn report may include a variety of other supporting documents that themselves need not be sworn. This is a logical scheme, as the officer's report will normally contain details of the arrest, and such matters would be within the personal knowledge of the arresting officer. (See *Davenport* v. *Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 139 [7 Cal.Rptr.2d 818].) The other items the statute requires be included in the report involve matters that may or may not be within the personal knowledge of the arresting officer. For example, in this case, Officer Dickerson could not swear to the results of the chemical test of Lake's urine sample because he did not perform the test. We find nothing in the statutory scheme that requires peace officers to have scientific training such as would permit them to swear, under penalty of

---

[8]Neither party has raised or briefed the question of whether the laboratory report was actually unsworn. Accordingly, we decline to address the issue.

perjury, to the truth of the results of a chemical test on an arrestee's blood or urine sample.[9]

Moreover, section 23158.2(a) speaks *generally* of the documentary material that must accompany the arresting officer's sworn report when the officer forwards the report to the DMV. A different statute *specifically* governs the handling of blood and urine test results. Section 23157, subdivision (g), states that, "[i]f the person submitted to a blood or urine test, the peace officer shall forward the results immediately to the appropriate forensic laboratory. The forensic laboratory shall forward the results of the chemical tests to the department within 15 calendar days of the date of the arrest." Because a more specific statute controls over a more general one (*Cumero* v. *Public Employment Relations Bd.* (1989) 49 Cal.3d 575, 587 [262 Cal.Rptr. 46, 778 P.2d 174]; *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 976-977, fn. 8 [140 Cal.Rptr. 669, 568 P.2d 394]), we find that section 23157, subdivision (g), is the controlling statute here. Because section 23157, subdivision (g), does not provide that the forensic laboratory report must be sworn, we conclude there is no express legislative directive that blood or urine test results be sworn.

Nor is this an irrational result. Whereas the results of a breath test administered by the arresting officer are relatively instantaneous, a blood or urine sample must be sent to a forensic laboratory for testing. Accordingly, when an arresting officer forwards the section 23158.2(a) report to the DMV, the results of any scientific tests generally will not be available and, therefore, could not be included in the officer's "sworn report." To read the word "sworn" in section 23158.2(a) as modifying the phrase "a report of the results of any chemical tests which were conducted . . ." is thus unreasonable.

Lake relies heavily on *Wheeler* v. *Department of Motor Vehicles* (1994) 34 Cal.App.4th 228 [45 Cal.Rptr.2d 462] (hereafter *Wheeler*) in urging we reach

[9]Had Lake opted for a breath test, it presumably would have been administered by Officer Dickerson, who then would have had to include the resulting BAC information in his sworn report, inasmuch as he would be the only person with personal knowledge of the test results and the circumstances of the test administration. (See *McKinney* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 519, 525 [7 Cal.Rptr.2d 18].) Lake argues it would be inconsistent to hold chemical test results need not be sworn, but a driver's refusal to take a test must be sworn. We are not faced in this case with a driver's refusal to take a blood, breath or urine test. We note, however, that it is reasonable to conclude section 23158.2 requires the arresting officer to include in his or her sworn report that information of which the officer has personal knowledge. Such information would include an arrestee's refusal to take a test, in violation of the implied consent law (§ 23157, subd. (a)), as well as the results of a breath test personally administered by the arresting officer. Such information would not include the results of a chemical test performed by a certified forensic analyst working in a forensic laboratory. We perceive no inconsistency.

a contrary conclusion.[10] *Wheeler* concerned the admissibility, in an administrative per se review hearing, of a forensic report from the Orange County crime laboratory in which handwritten initials, purportedly from the analysts, were placed on the report near the statement of the chemical test results. (34 Cal.App.4th at p. 232.) No signature, however, appeared near the statement of certification at the bottom of the page or, indeed, anywhere on the report. (*Ibid.*) The arrested driver objected to the admission of the report, arguing it could not be considered unless it was sworn. The DMV hearing officer upheld the suspension, but the trial court reversed. (*Id.* at p. 233.)

The Court of Appeal affirmed. The court began by conceding "the terms of [section 23158.2(a)] do not expressly specify whether the 'report of the results of any chemical tests' must be sworn. On its face, section 23158.2 arguably requires a police officer only to swear to relevant events of which the officer has personal knowledge." (*Wheeler, supra,* 34 Cal.App.4th at p. 233.) Nevertheless, the court noted that had the driver opted for a breath test, the results of that test would be included in the arresting officer's sworn report, and "[w]e cannot believe the Legislature contemplated a *lesser* standard (i.e., an unsworn report) with a blood or urine test. The purpose of the sworn statement is to provide the DMV with competent evidence sufficient to meet its burden of proving the facts necessary to support a license suspension. [Citations.] An unsworn statement merely listing the blood test results, whether attached to the officer's statement or introduced separately, is nothing more than inadmissible hearsay which is insufficient evidence (in and of itself) to support a license suspension. [Citations.] We hold, therefore, that the results of *any* chemical test must be sworn under section 23158.2. Since neither analyst swore to the blood test results here, the unsworn report did not meet the requirements of the statute and the evidence is insufficient to support the findings of the hearing officer." (*Wheeler, supra* at pp. 233-234, original italics, fn. omitted.)

While it may be true that a "requirement that *all* chemical test results be sworn serves sound public policy" (*Wheeler, supra,* 34 Cal.App.4th at p. 235, italics in original), such considerations cannot deflect our attention from the actual words of the statute. (See *California Teachers Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632-633 [59 Cal.Rptr.2d 671, 927 P.2d 1175] [We follow the Legislature's intent, as gleaned from the words of the statute, " ' " 'whatever may be thought of the

---

[10]Although Lake also relies on *Downer* v. *Zolin* (1995) 34 Cal.App.4th 578 [40 Cal.Rptr.2d 288], to reach a contrary result, that case is unpersuasive because the *Downer* court expressly stated it "need not address" the issue of whether the lab report must be sworn, because it found the analyst's forensic report was inadmissible hearsay in any event. (*Id.* at p. 581.) Accordingly, its discussion of the certification question was mere dictum.

wisdom, expediency, or policy of the act.' " ' " (Quoting *People* v. *Weidert* (1985) 39 Cal.3d 836, 843 [218 Cal.Rptr. 57, 705 P.2d 380].)].) We thus agree with the *Wheeler* court to the extent it concludes nothing on the face of section 23158.2 requires that the report of chemical test results be sworn. (*Wheeler, supra,* at p. 233.)

We are not, however, persuaded by the *Wheeler* court's further conclusion that the Legislature could not have contemplated breath test results be sworn, but not blood and urine test results. The Legislature has clearly exhibited its ability to specify when a type or class of evidence must be sworn. For example, in conducting its automatic internal administrative review of a suspension under the administrative per se statutes, the DMV considers "the *sworn report* submitted by the peace officer . . . *and any other evidence accompanying the report.*" (§ 13557, subd. (a), italics added.) This phraseology suggests the "other evidence" is not required to be sworn evidence. Similarly, section 14104.7 states generally that "[a]t any hearing, the [DMV] shall consider its official records *and may receive sworn testimony.*" (§ 14104.7, italics added.) Again, the phraseology of this statute indicates that, although live testimony must be sworn, the department's official records need not be.

In addition, it seems significant that in section 23158.2(a), the Legislature specifically provided that the arresting officer "shall immediately forward to the department a *sworn* report. . . ." (italics added), whereas in section 23157, subdivision (g), the Legislature merely provided the officer shall "forward the [blood or urine sample] immediately to the appropriate forensic laboratory," which in turn has the legal obligation to "forward the results of the chemical tests to the department within 15 calendar days of the date of arrest." Had the Legislature intended the results of the chemical tests be certified under penalty of perjury, it could have easily indicated in section 23157, subdivision (g), that the forensic laboratory forward the "results of the chemical test to the department *in a sworn report.* . . ." Indeed, the Legislature had previously amended section 23158.2, subdivision (b), to specifically change the phrase "[t]he report" to the phrase "[t]he peace officer's *sworn* report." (Italics added; compare Stats. 1989, ch. 1460, § 20, p. 6520, with Stats. 1990, ch. 431, § 16, p. 1849.)

Following the maxim *expressio unius est exclusio alterius,* that is, that "[t]he expression of some things in a statute necessarily means the exclusion of other things not expressed" (*Gikas, supra,* 6 Cal.4th at p. 852; see *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13 [241 Cal.Rptr. 67, 743 P.2d 1323]), we conclude the express statutory provision that the DMV may consider some types of evidence (e.g.,

the police officer's section 23158.2(a) report, live testimony) only if sworn, together with the absence of a similar statutory limitation on consideration of blood and urine test results, indicates a legislative intent that blood and urine test results may be admitted in a DMV administrative hearing despite a lack of certification under penalty of perjury.

We thus conclude a forensic laboratory report need not be sworn as a condition of admission into evidence at an administrative per se review hearing. So long as the forensic laboratory report complies with other statutory requirements, it becomes an "official record" of the DMV and, though unsworn, is admissible in the administrative review hearing pursuant to section 14104.7.

This conclusion is consistent with the relaxation of evidentiary rules applicable in administrative hearings. A report prepared by a forensic laboratory properly licensed by the State of California (see tit. 17, Cal. Code Regs., § 1215 et seq.), though unsworn, "is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs" (Gov. Code, § 11513, subd. (c)), and the admission of such evidence will facilitate the immediate removal of dangerous drivers from the road. The Legislature could reasonably have concluded that the formality of having forensic alcohol analysts swear under penalty of perjury to the accuracy of their test results, while unquestionably providing an additional layer of confidence the BAC evidence is correct, could be dispensed with in administrative hearings at which no criminal penalties will be imposed.

Finally, to the extent Lake contends the forensic laboratory report comprises insufficient evidence of his BAC because it is inadmissible hearsay, we agree with the Court of Appeal below that the report falls within the public employees record exception to the hearsay rule. (Evid. Code, § 1280.) The report indicates it was prepared "by and within the scope of duty of a public employee," that it was done "near the time of the act" of testing the urine sample, and the "sources of information and method and time of preparation were such as to indicate its trustworthiness." Drawing all logical and reasonable inferences in the trial court's favor (Gananian, supra, 33 Cal.App.4th at p. 638), we conclude sufficient evidence supports the finding Lake was driving with .08 BAC or greater. Lake does not strongly argue otherwise.[11]

CONCLUSION

We conclude substantial evidence supports the trial court's denial of the petition for writ of mandate, which sought to overturn the DMV hearing

[11]To the extent Wheeler, supra, 34 Cal.App.4th 228, and Downer v. Zolin, supra, 34 Cal.App.4th 578, are inconsistent with this analysis, those cases are disapproved.

officer's decision upholding the suspension of Lake's driver's license. Officer King's police report and the report from forensic laboratory of the San Mateo Sheriff's Office, though unsworn, were both properly considered by the DMV hearing officer and those reports, together with other evidence properly considered, provided substantial evidence to support the hearing officer's conclusion the DMV had proved by a preponderance of the evidence that Lake was driving with more than a .08 percent blood-alcohol concentration.

The decision of the Court of Appeal is affirmed.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Chin, J., and Brown, J., concurred.

Appellant's petition for a rehearing was denied October 22, 1997.