Filed 4/15/16  Quinonez v. State Dept. of Motor Vehicles CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOEL J. QUINONEZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>STATE OF CALIFORNIA, DEPARTMENT OF MOTOR VEHICLES,<br><br>Defendant and Respondent. | D068320<br><br>(Super. Ct. No. 37-2015-00003540-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Lisa C. Schall, Judge.  Affirmed.

Paul H. Neuharth, Jr., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Chris A. Knudsen, Assistant Attorney General, Christine Mersten and Theodore S. Drcar, Deputy Attorneys General, for Defendant and Respondent.

Joel J. Quinonez appeals from a judgment denying his petition for a writ of mandate challenging the suspension of his driver's license by the State of California Department of Motor Vehicles (DMV), based on its administrative finding that Quinonez refused to submit to a chemical test of his blood alcohol content, as required by Vehicle

Code section 13353.[1]  Quinonez contends that the arresting officer improperly gave him a preliminary alcohol screening (PAS) admonition, which was only required for driving under the influence (DUI) of alcohol probationers, when he was not on probation for DUI.  He contends that this admonition confused him into thinking that he would not lose his driver's license if he did not consent to the chemical test.  We affirm the trial court's denial of the writ of mandate based on substantial evidence that Quinonez received a proper postarrest admonition of his legal obligation to submit to a blood or breath test, but then refused to submit to chemical testing.  We also find that the trial court properly rejected Quinonez's confusion argument.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Circumstances leading to Quinonez's arrest for driving under the influence*

On the afternoon of September 27, 2014, at 2:40 p.m., United States Customs and Border Patrol Officer Pero observed Quinonez erratically driving his Jeep as he approached a border entry booth.  Officer Pero noticed Quinonez's eyes were red and glassy, and his breath smelled of alcohol.  When asked how much he had to drink, Quinonez replied in slurred speech, "None.  I'm good dude."  Officer Pero asked Quinonez to step out of the Jeep and walk to the back of the vehicle.  Unsteady on his feet, Quinonez stumbled towards Officer Pero.  Officer Pero believed that Quinonez was intoxicated, handcuffed him and escorted him to the security office for detention pending the arrival of the California Highway Patrol (CHP).

---

[1]     All further statutory references are to the Vehicle Code unless otherwise stated.

CHP Officer Espitia contacted Quinonez. He observed that Quinonez exhibited objective symptoms of intoxication, including the strong odor of alcohol, red, watery eyes and slurred speech. Quinonez stated that he had had nothing to drink, and refused to perform field sobriety tests. Officer Espitia read Quinonez the following PAS admonition:[2] "I am requesting that you take a preliminary alcohol screening test to further assist me in determining whether you are under the influence of alcohol. You may refuse to take this test; however, this is not an implied consent test and if arrested, you will be required to give a sample of your blood, breath, or urine for the purpose of determining the actual alcoholic and drug content of your blood." At 3:28 p.m., Quinonez refused to take the PAS test. At 3:30 p.m., Officer Espitia concluded that Quinonez had been driving under the influence and placed him under arrest.

B. *Reading of statutory implied consent admonition*

Fifteen minutes after placing Quinonez under arrest, at 3:45 p.m., Officer Espitia read him the implied consent chemical test admonition pursuant to section 23612, contained in DMV form DS 367. Officer Espitia stated, "Because I believe you are under the influence of alcohol, you have a choice of taking a breath or blood test. [¶] If you refuse to submit to, or fail to complete a test, your driving privilege will be suspended for one year or revoked for two or three years. [¶] You do not have the right to talk to an attorney or have an attorney present before stating whether you will submit to a test,

---

[2]    The box on DMV form DS-367 PAS Test Refusal (DUI PROBATION) should be checked only if the DUI suspect is on probation for DUI. The administrative hearing officer concluded that checking the box was a "clerical error" because Quinonez was not on probation for DUI. Nevertheless, the administrative hearing officer concluded that Officer Espitia did read the PAS admonition to Quinonez.

3

before deciding which test to take, or during the test. [¶] If you cannot, or state you cannot, complete the chemical test you choose, you must submit to and complete a remaining test." When Quinonez was asked whether he would take a breath test, he replied, "No." He was then asked whether he would take a blood test, Quinonez also replied, "No." Lastly, when asked why he would not submit to a blood test or a breath test, Quinonez stated, "I just want to go home— It'll be incriminating."

Because Quinonez refused to consent to a blood or breath test after his arrest, Officer Espitia obtained a search warrant to draw Quinonez's blood. The subsequent blood draw and chemical analysis resulted in a reported blood alcohol reading of 0.21g/100ml.

C. *Administrative hearing to determine whether Quinonez's driver's license should be suspended*

In October 2014, the DMV held an administrative hearing on suspension of Quinonez's driving privileges for refusal to consent to chemical testing for blood alcohol. After overruling Quinonez's objections on grounds of hearsay and lack of foundation, the hearing officer admitted documentary evidence, including DMV form DS 367, Officer Pero's observation report and Officer Espitia's arrest report and sworn statement. The hearing officer also admitted into evidence Quinonez's driving record.

Quinonez provided the only live testimony at the hearing. He testified that he drove up to the booth at the San Ysidro border crossing and was detained by the border patrol. He admitted that he refused to take the field sobriety test, but denied receiving a chemical test admonition, i.e., he denied being told that if he failed to submit to a blood or breath test that he would lose his driver's license and denied refusing to take a blood

4

test.  Quinonez admitted that he was asked to take a breath or blood test about 45 minutes to an hour after being transported to the CHP station.  According to Quinonez, "[I]t all happened so fast and I was so scared.  I said is that something I have to do.  He goes you have to do one or the other.  And then I believe I just said, well let's do—let's draw the blood.  But I believe . . . he had a subpoena or a court order in his hand by then."  Quinonez acknowledged that the officer had a warrant signed by a judge.

Quinonez admitted he lied to the officers when he said he had not been drinking in Mexico because he was "scared" and "nervous."  He also admitted that he was nervous in testifying at the hearing.  When asked by the hearing officer whether his nervousness at the hearing could also produce untruthful testimony, Quinonez testified that he could not answer that question.

In the November 2014 decision, the hearing officer found that Quinonez's driver's license suspension was proper.  The hearing officer determined that Officer Espitia made a "clerical error" when he checked the DUI probation admonishment on the sworn report because Quinonez was not on DUI probation.  The hearing officer determined that at 3:28 p.m., Officer Espitia admonished Quinonez regarding the PAS test, as listed on page 2 of the arrest report, which stated, "I am requesting that you take a preliminary alcohol screening test to further assist me in determining whether you are under the influence of alcohol.  You may refuse to take this test; however, this is not an implied consent test and if arrested, you will be required to give a sample of your blood, breath, or urine for the purpose of determining the actual alcoholic . . . content of your blood."  The hearing officer further determined that after Quinonez's arrest, at 3:45 p.m., Officer Espitia

5

admonished Quinonez regarding the consequences of refusal to submit to a chemical test as set forth in DMV form DS-367. After receiving the proper implied consent admonition, Quinonez refused to submit to a chemical test.

The hearing officer determined that Quinonez's testimony that he was never properly admonished was not credible because Quinonez admitted he lied to the officer. The hearing officer accepted Officer Espitia's sworn statement that Quinonez received the proper chemical test admonition but refused to provide a chemical sample.

The hearing officer also determined, based on Officer Espitia's sworn statement and reports, and based on the fact that Officer Espitia had to obtain a search warrant for forced withdrawal of Quinonez's blood, that Quinonez refused to consent to chemical testing to determine intoxication.

D. *Mandamus proceedings and ruling*

The trial court denied the petition for writ of mandate. The court upheld the hearing officer's determinations that the arresting officer properly admonished Quinonez that failure to provide a blood or breath sample would result in a one-year license suspension, and that after proper admonishment, Quinonez refused to take a blood or breath test.

Quinonez's counsel argued that Quinonez was confused by the PAS admonition into believing that failure to consent to chemical testing would not lead to automatic suspension of his license. However, Quinonez's testimony did not support the confusion argument because Quinonez never testified that he was confused by the PAS admonition. He testified that he had never received any admonition that he would (or would not) lose

6

his driver's license for failure to submit to a chemical test. He testified that had he been admonished that he would lose his driver's license for failure to submit to chemical testing, he would have consented to providing a chemical sample.

The trial court agreed with the hearing officer's conclusions that mention of the PAS test was erroneously given but determined that there was no officer-induced confusion. Instead, the trial court concluded that Quinonez received a proper postarrest admonition regarding his obligation to submit to chemical testing, and that his refusal stemmed from a desire to avoid providing incriminating evidence, i.e., the refusal was based on a "hard realization of where [the chemical testing] is likely to lead." The court agreed with the hearing officer's determination that Quinonez's testimony lacked credibility.

The trial court also observed the fact that the CHP officer went to the trouble of obtaining a search warrant for the forced withdrawal of blood strongly indicated that Quinonez refused to voluntarily provide a sample of breath or blood. The court recognized that it is highly unlikely that an officer would chose to deal with the delay and paperwork required to obtain a search warrant, unless the suspect refused to voluntarily accede to chemical testing.

DISCUSSION

A. *Standard of Review*

"In ruling on an application for a writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, ' "whether the weight of the evidence supported the administrative decision." '

7

[Citations.] . . . On appeal, we 'need only review the record to determine whether the trial court's findings are supported by substantial evidence.' [Citation.] ' "We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings." ' " (*Lake v. Reed* (1997) 16 Cal.4th 448, 456-457 (*Lake*).)

Under the independent judgment test, the trial court determines whether the administrative hearing officer abused his or her discretion because the findings are not supported by the weight of the evidence. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 816-817.) On appellate review of the trial court's exercise of its independent judgment, this court will sustain the trial court's findings if they are supported by substantial evidence. (*Id.* at p. 824.) We resolve all conflicts in favor of the DMV, as the party prevailing in the trial court, and give it the benefit of all reasonable inferences in support of the judgment. (*Pasadena Unified Sch. Dist. v. Commission on Professional Competence* (1977) 20 Cal.3d 309, 314.) We do not substitute our deductions regarding the record for those of the trial court. (*Ibid.*) " ' "We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings." ' " (*Lake*, *supra*, 16 Cal.4th at p. 457.)

Where the facts are undisputed and the issue involves the correct application of a statute or administrative regulation, we consider that question of law de novo and are not

bound by the trial court's legal determination. (*Roze v. Department of Motor Vehicles* (2006) 141 Cal.App.4th 1176, 1184; *Payne v. Dep't of Motor Vehicles* (1991) 235 Cal.App.3d 1514, 1517; *Carrey v. Department of Motor Vehicles* (1986) 183 Cal.App.3d 1265, 1270.) Where the trial court analyzed the record, made credibility determinations, and applied the law to the facts as established in that manner, we should give the trial court appropriate deference with respect to its views on whether the administrative findings were supported by the weight of the evidence. (*Fukuda*, *supra*, 20 Cal.4th at pp. 816-817.)

B. *Substantial evidence supported the court's determination that Quinonez was properly admonished regarding his obligation to submit to chemical testing.*

Quinonez testified that he never was informed that if he refused to submit to a blood or breath test, he would lose his license. On appeal, Quinonez contends that he was confused about the consequences of not submitting a PAS test because he was told that if he did not submit to this preliminary screening, he would not lose is license. We reject these contentions. Substantial evidence supported the court's determination that Officer Espitia properly admonished Quinonez regarding loss of his license if he did not consent and that afterwards Quinonez refused to consent to chemical testing. Substantial evidence also supported the court's determination that Quinonez failed to submit to chemical testing due to his fear of incrimination and was not based on confusion. Although Quinonez testified that he never received any admonition on the adverse consequences of refusal to provide a chemical sample, both the administrative hearing officer and the trial court found his entire testimony not credible. Thus, the trial court properly rejected his contention that he was confused by an admonition regarding

9

consequences of failing to provide a chemical sample. Substantial evidence supported the trial court's determination that Quinonez's refusal to submit to chemical testing was engendered by Quinonez's well-founded fear that the chemical testing would provide proof of his intoxication.

If a person is lawfully arrested for driving under the influence of alcohol, he or she is deemed to have given his or her consent to chemical testing of his or her blood or breath to determine blood alcohol content. (§ 23612, subd. (a)(1)(A); *Garcia v. Department of Motor Vehicles* (2010) 185 Cal.App.4th 73, 81.) A driver lawfully arrested for driving under the influence of alcohol has the choice of a breath or blood test, and the arresting officer shall inform the driver of that choice. (§ 23612, subd. (a)(2)(A).) "If the person arrested either is incapable, or states that he or she is incapable of completing the chosen test, the person shall submit to the remaining test." (*Ibid.*) A person who refuses to submit to, or fails to complete, a chemical test under section 23612 is subject to suspension of his or her driving privileges, among other sanctions. (§ 13353.) The officer shall tell the arrestee that his or her failure to submit to, or failure to complete, the required chemical testing will result in a fine and suspension or revocation of driving privileges. (§ 23612, subd. (a)(1)(D). If the lawfully arrested motorist refuses to submit to a chemical test as requested by a peace officer, the DMV is required to suspend his or her driving privilege. (§ 13353; *Garcia*, at p. 81.)

Under Evidence code section 1280, Officer Espitia's sworn statement and arrest report are both admissible to prove the elements of the DMV's case for suspension. (*Hildebrand v. Department of Motor Vehicles* (2007) 152 Cal.App.4th 1562, 1570.)

10

Substantial evidence from Officer Espitia's sworn statement and reports support the trial court's determination that Officer Espitia properly admonished Quinonez that he was required to submit to chemical testing. Officer Espitia's sworn statement establishes that at 3:45 p.m., after he placed Quinonez under arrest, he read him the standard chemical test admission in DMV form 367. Officer Espitia told Quinonez, "Because I believe you are under the influence of alcohol, you have the choice of taking a breath or blood test. [¶] If you refuse to submit to, or fail to complete a test, your driving privilege will be suspended for one year or revoked for two or three years." After receiving this admonition, Quinonez refused to submit to either a blood or breath test.

Based on this evidence, the trial court agreed with the findings of the DMV hearing officer that after placing Quinonez under arrest, using DMV form 367, he correctly admonished Quinonez that he was required to take a breath or blood test, otherwise his license would be suspended. And, that after receiving this admonition, Quinonez refused to submit to either a blood or breath test.

Quinonez testified that he did not understand that if he refused to submit to a chemical test he could lose his driver's license. However, under the substantial evidence test, the trier of fact is free to reject the testimony of a witness that she did not find believable. Because Quinonez admitted at the hearing that he lied to the arresting officer when he stated that he had nothing to drink, the administrative hearing officer found all of Quinonez's testimony not credible, including his testimony that he was not properly admonished. The trial court judge concurred with this analysis.

11

On appeal, Quinonez argues that he was confused by PAS admonition, yet he provided no testimony to support this contention that he was led to believe that failure to submit to a chemical test would not result in loss of his driver's license.[3] In fact, he did not recall ever receiving *any* admonishment involving providing a chemical sample. Notably, Quinonez never raised the confusion argument at the administrative hearing. Further, when Quinonez's attorney raised it in the trial court for the first time, the judge properly rejected this argument on the merits based on substantial evidence, stating: "[W]hen you listen to [the] testimony he provided, you really don't get a sense that he was confused here. What we get is that he was untruthful at the time of the arrest, [the hearing officer] believes [Quinonez] continued to be less than forthcoming in some of the things he said." Substantial evidence supports the court's rejection of the confusion theory. (See *White v. Department of Motor Vehicles* (2011) 196 Cal.App.4th 794, 798.) The DMV "is not required to show it was right." (*Elizabeth D. v. Zolin* (1993) 21 Cal.App.4th 347, 355.) Rather, Quinonez has the affirmative obligation to demonstrate error and must overcome a "strong presumption of . . . correctness," which is intrinsic to appellate review of trial court mandamus decisions. (*Fukuda v. City of Angels*, *supra*, 20 Cal.4th at p. 812.) Based on this record, Quinonez failed to carry his burden to demonstrate error. To the contrary, substantial evidence supports the DMV's

---

[3]   It is also difficult to understand Quinonez's confusion argument because the PAS admonition is not confusing. It states that although you may refuse to take the test, "this is not an implied consent test and *if arrested, you will be required to give a sample of your blood, breath, or urine for the purpose of determining the actual alcoholic and drug content of your blood.*"  (Emphasis added.)

determination that Quinonez was properly informed of his obligation to consent to chemical testing but did not consent to chemical testing.[4]

C. *Arguments raised for the first time in the reply brief cannot be considered.*

On reply, for the first time, Quinonez argues that the hearing officer should have granted a continuance to allow the hearing officer to summon Officer Espitia to provide additional information on giving the PAS warning for probationers. Absent good cause, we do not consider arguments raised for the first time in a reply brief because the opposing party has no opportunity to respond. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.) Furthermore, there are no grounds for a continuance of the administrative hearing because Quinonez did not even raise the confusion argument at the administrative level and his attorney made this argument for the first time in the trial court. Also, Quinonez could have subpoenaed Officer Espitia to testify at the hearing but did not do so and did not request a continuance at the administrative hearing for that purpose. Under well-established procedures, the officer's sworn statement and reports were perfectly admissible to establish lack of consent. Under all these circumstances, Quinonez cannot fault the hearing officer for failure to grant a continuance.

Quinonez also complains for the first time in a reply brief that DMV hearings are inherently unfair because DMV hearing officers are DMV employees who lack legal training. This new argument not raised at the administrative level or at the trial court (and also raised for the first time in a reply brief), may not be made for the first time on

---

[4]    The ultimate taking of a blood sample after an initial refusal is not significant. It is the initial refusal that supports the suspension of the driver's license under section 13353. (*Barrie v. Alexis* (1984) 151 Cal.App.3d 1157, 1162.)

13

appeal from a denial of a writ of administrative mandamus.  (*Shor v. Dep't of Social Services* (1990) 223 Cal.App.3d 70, 75; *Reichardt v. Hoffman*, *supra*, 52 Cal.App.4th at p. 764.)  We also note that the entire DMV administrative procedure used here for suspension of suspected drunk drivers' licenses for failure to submit to chemical testing has been exhaustively scrutinized and upheld by the Supreme Court.  (See *Lake*, *supra*, 16 Cal.4th at pp. 451-468.)

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to the DMV.


PRAGER, J.[*]

WE CONCUR:


HALLER, Acting P. J.


IRION, J.

---

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.