Filed 3/15/13  Kirschenmann v. Shiomoto CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JEFFREY SCOTT KIRSCHENMANN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JEAN SHIOMOTO, as Chief Deputy Director, etc.,<br><br>Defendant and Respondent. | F063668<br><br>(Super. Ct. No. S-1500-CV-271669)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Linda S. Etienne, Commissioner.

Middlebrook & Brehmer, Richard O. Middlebrook, Jeremy C. Brehmer and Diane M. Medina, for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Assistant Attorney General, Kenneth C. Jones and Lorinda D. Franco, Deputy Attorneys General, for Defendant and Respondent.

-ooOoo-

---

[*]     Before Cornell, Acting P.J., Kane, J. and Poochigian, J.

Jeffrey Scott Kirschenmann appeals from an order denying the writ of mandate he filed in the trial court, which sought to preclude enforcement of an order issued by the Department of Motor Vehicles (DMV) suspending his driving privilege after he was arrested for driving with a blood-alcohol content in excess of 0.08 percent, in violation of Vehicle Code section 23152, subdivision (b).[1]

Kirschenmann's primary argument is that there was insufficient evidence to identify him as the driver of the vehicle. The basis for this argument is an assumption that identity can be established only by eyewitness testimony. As we shall explain, the circumstantial evidence in the record adequately identified Kirschenmann as the driver of the vehicle.

Kirschenmann also argues that omissions in the forms prepared by the arresting officer violated section 13380, thus precluding suspension of his driving privilege. There is no merit to this argument either, and we shall affirm the order denying his petition.

### FACTUAL AND PROCEDURAL SUMMARY

Two witnesses observed Kirschenmann lose control of his vehicle, strike two trees and a stop sign, and finally stop when his vehicle struck a cinder block wall. Kirschenmann exited his vehicle and was standing nearby when Officer Rex Davenport arrived at the scene. Davenport observed Kirschenmann and observed bloodshot and/or watery eyes, an unsteady gait, slurred speech, and smelled the odor of alcohol. Kirschenmann refused to make any statement at the scene without the presence of his attorney. Kirschenmann took a breath test, which registered a blood-alcohol content of 0.18 percent on the first test and 0.19 percent on the second test. Kirschenmann was arrested.

DMV is required to suspend the driving privilege of any person who operates a vehicle with a blood-alcohol content of 0.08 percent or higher. (§ 13353.2, subd. (a)(1).)

---

[1]All further statutory references are to the Vehicle Code unless otherwise stated.

2.

As required by section 13382, Davenport served Kirschenmann with a notice of the order suspending his driving privilege, confiscated his driver's license, and issued Kirschenmann a temporary driver's license. The temporary driver's license was valid for a period of 30 days. At the expiration of the 30-day period, the suspension of Kirschenmann's driving privilege would begin. (*Id.*, subd. (b).)

When a police officer issues an order suspending someone's driving privilege, DMV is required to conduct an internal review of the order. (§ 13557, subd. (a).) In addition, the driver may request a hearing on the matter. (§ 13558, subd. (a).) The review, and hearing if requested within 10 days of receipt of the notice of suspension, are required to occur during the 30-day grace period. (*Id.*, subd. (d).)

This procedure, often referred to as the "administrative per se" law, is intended "(1) to provide safety to persons using the highways by quickly suspending the driving privilege of persons who drive with excessive blood-alcohol levels; (2) to guard against erroneous deprivation by providing a prompt administrative review of the suspension; and (3) to place no restriction on the ability of a prosecutor to pursue related criminal actions. [Citations.]" (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 847.)

Kirschenmann requested a hearing on the order suspending his driving privilege.[2] The issues at the hearing were established by statute. (§ 13558, subd. (c)(2).) As relevant here, DMV, which bore the burden of proof by a preponderance of the evidence (*Lake v. Reed* (1997) 16 Cal.4th 448, 455 (*Lake*)), was required to establish (1) Davenport had reasonable cause to believe Kirschenmann had been driving a motor

---

[2]For the sake of convenience, we adopt certain phrases throughout this opinion. We refer to the individual appointed to preside over the hearing as the hearing officer; we refer to the document prepared by the arresting officer on DMV form DS 367 (sometimes referred to as the form or the DMV form) as the sworn statement; and, finally, we refer to the police report of the incident as the accident report. We use these conventions regardless of whether we are referring to this case or to other opinions.

vehicle with a blood-alcohol content of 0.08 percent or greater, (2) Kirschenmann was placed under arrest, and (3) Kirschenmann actually had a blood-alcohol content of 0.08 percent or higher (§ 13557, subd. (b)(1)(A-C)).

The hearing officer upheld the suspension. Kirschenmann then filed a writ of mandate in the superior court seeking to prevent enforcement of the suspension. The trial court denied the writ. Kirschenmann appeals from the denial of the writ.

## DISCUSSION

"In ruling on an application for a writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, '"whether the weight of the evidence supported the administrative decision."' [Citations.] … On appeal, we 'need only review the record to determine whether the trial court's findings are supported by substantial evidence.' [Citation.] '"We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. [Citation.]"' [Citations.]" (*Lake, supra,* 16 Cal.4th at pp. 456-457.)

The issue in this case is whether there was sufficient evidence to permit DMV to suspend Kirschenmann's driving privileges. The hearing officer was required to consider "the sworn report submitted by the peace officer … and any other evidence accompanying the report." (§ 13557, subd. (a).) DMV submitted form DS 367 (the officer's sworn statement) prepared by Davenport, the accident report prepared by Davenport, and Kirschenmann's driving record. These three documents set forth the above facts.

Kirschenmann impliedly acknowledges that if all of the evidence submitted was properly considered, then the finding suspending his driving privilege was proper. He

4.

argues, however, the documents relied on by the hearing officer and the trial court did not contain sufficient *admissible* evidence to support the necessary findings.

Resolution of this issue requires us to consider relevant statutes and cases interpreting the administrative per se law. Section 13557, subdivision (a) requires the hearing officer to consider the officer's sworn statement and any other evidence accompanying the report. This chapter in the Vehicle Code also provides that all matters not covered in the chapter shall be governed by the chapter in the Government Code entitled "Administrative Adjudication: Formal Hearing," which begins at Government Code section 11500. (Veh. Code, § 14112, subd. (a).)

Relevant to this issue, and the primary basis for Kirschenmann's arguments, is Government Code section 11513, which addresses admission of evidence at administrative hearings.[3] This section requires oral evidence be taken only if an oath or affirmation is first obtained and provides each party with the right to examine and cross-

---

[3]Government Code section 11513 states in full: "(a) Oral evidence shall be taken only on oath or affirmation. [¶] (b) Each party shall have these rights: to call and examine witnesses, to introduce exhibits; to cross-examine opposing witnesses on any matter relevant to the issues even though that matter was not covered in the direct examination; to impeach any witness regardless of which party first called him or her to testify; and to rebut the evidence against him or her. If respondent does not testify in his or her own behalf he or she may be called and examined as if under-cross examination. [¶] (c) The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions. [¶[ (d) Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions. An objection is timely if made before submission of the case or on reconsideration. [¶] (e) The rules of privilege shall be effective to the extent that they are otherwise required by statute to be recognized at the hearing. [¶] (f) The presiding officer has discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time."

examine witnesses. It also provides the hearing need not be conducted according to the technical rules of evidence, and any evidence that is of the type "responsible persons are accustomed to rely in the conduct of serious affairs" shall be admitted, "regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." (*Id.,* subd. (c).) Hearsay evidence is admissible for the purpose of "supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." (*Id.,* subd. (d).)

The Supreme Court has addressed the administrative per se law in several opinions. Two of those opinions are relevant here. In *Lake*, Lake was involved in an accident with another vehicle. Officers Dickerson and King arrived at the scene and determined Lake was exhibiting signs of intoxication. Officer Dickerson arrested Lake and completed the sworn statement. Officer King prepared the accident report, in which Lake admitted he was driving. The accident report also stated that other witnesses identified Lake as the driver of his vehicle. Lake was arrested, and the urine sample he submitted showed that his blood-alcohol content exceeded the statutory limit. (*Lake, supra,* 16 Cal.4th at pp. 452, 453.)

Lake challenged the evidence that identified him as the driver of his vehicle at the time of the accident. The Supreme Court began its analysis by noting that at the initial administrative review, DMV is required to review the police officer's sworn statement and any other evidence submitted with the statement, but at the appeal hearing "the universe of potentially available evidence is enlarged, for '[a]ny evidence at the hearing shall not be limited to the evidence presented at an administrative review pursuant to Section 13557.' [Citation]" (*Lake, supra,* 16 Cal.4th at p. 458.) The Supreme Court then cited Government Code section 11513, discussed above.

The Supreme Court next examined the evidence presented by DMV, which consisted of the police officer's sworn statement, as well as the accident report prepared

by another officer. The information in the accident report was not subscribed under penalty of perjury. The Supreme Court observed that because neither officer observed the accident, and the arresting officer did not hear Lake's admission that he was driving, the only evidence in the *sworn statement* (which is prepared by the arresting officer) identifying Lake as the driver of the vehicle was inadmissible hearsay. Thus, the evidence in the *sworn statement* violated the provision in Government Code section 11513, subdivision (d) that prohibits the use of hearsay as the only evidence to support a finding unless the evidence would be admissible in a civil action.

The issue, therefore, was whether the *accident report* constituted admissible evidence that Lake was driving, which could then be used to supplement the sworn statement. The Supreme Court first observed that section 13557, subdivision (a) requires DMV to consider the *sworn statement* prepared by the arresting officer, but also contemplates consideration of all of the supporting evidence submitted with the sworn statement. Therefore, there was no statutory prohibition that prevented DMV from considering the *accident report* that was submitted with the *sworn statement*, even though the accident report was prepared by a different officer. (*Lake, supra,* 16 Cal.4th at pp. 459-460.) The Supreme Court also concluded the hearing officer properly considered the accident report because it was the type of report on which "'responsible persons are accustomed to rely in the conduct of serious affairs.'" (*Id.* at pp. 460-461.)

Having concluded the hearing office properly could consider the accident report in addition to the sworn statement, the Supreme Court turned to the question of whether the accident report contained admissible evidence to establish Lake was driving the vehicle at the time the accident occurred. The Supreme Court first pointed out that the accident report fell within the public employee record exception to the hearsay rule and thus an objection to the report would have been overruled in a civil action. (Evid. Code, § 1280; *Lake, supra,* 16 Cal.4th at p. 461.)

7.

The information within the accident report that identified Lake as the driver, however, also was hearsay. The Supreme Court concluded there was admissible evidence identifying Lake as the driver because Lake's admission he was driving the vehicle fell within the party admission exception to the hearsay rule. (Evid. Code, § 1220; *Lake, supra,* 16 Cal.4th at p. 461.) Accordingly, the witness statements, which did not fall within an exception to the hearsay rule, could be used to explain and supplement the accident report and the sworn statement pursuant to the provisions of Government Code section 11513, subdivision (d). (*Lake,* at pp. 461-462.) The Supreme Court concluded this portion of the opinion by summarizing its holding:

> "Although our interpretation of the relevant statutes will render it easier for the DMV to sustain an administrative suspension of a person's driver's license, this result is consonant with the Legislature's intent in creating the statutory scheme. We reiterate that the administrative per se laws are intended to provide an efficient mechanism whereby those persons who drive after consuming dangerous amounts of alcohol can have their driver's licenses quickly suspended so as to ensure they will not endanger the public by continuing to drive. [Citation.] One aspect of this accelerated procedure is a slight relaxation of the rules of evidence applicable to an administrative per se review hearing.

> "Of course, in a great number of cases, the arresting officer will have personally observed the arrestee driving in a manner suggestive of being intoxicated, and any question of hearsay or lack of personal knowledge will not materialize. In other cases, as here, where the officer in question did not view the driver behind the wheel of the car, we find it is consistent with the purposes of the administrative per se law to permit the DMV to consider both: (i) the sworn report of the peace officer who responded to the scene and arrested the person suspected of driving while intoxicated (or with an elevated [blood-alcohol content]); as well as (ii) the unsworn report of any officer who, within the scope of the officer's official duty, wrote a report at or near the time of the accident under circumstances indicating trustworthiness of the sources of information and method of preparation. [Citation.]" (*Lake, supra,* 16 Cal.4th at p. 462.)

In the second part of the opinion, the Supreme Court rejected Lake's challenge to the evidence that his blood-alcohol content exceeded the statutory maximum. DMV

8.

submitted a report from the county forensic laboratory, which showed a test of Lake's urine established he had a blood-alcohol content of 0.19 percent. Lake argued that because the report was not signed under penalty of perjury, it was inadmissible. The Supreme Court again observed the statutory scheme anticipated the sworn statement would be accompanied by other material, and that it was unlikely the officer would have the personal knowledge or scientific training to permit him or her to qualify as an expert on the testing. (*Lake, supra,* 16 Cal.4th at p. 463.) Because there was no express statutory requirement that a forensic test be sworn, the Supreme Court concluded the report from the forensic laboratory was admissible. (*Id* at p. 464.)

> "[W]e conclude the express statutory provision that the DMV may consider some types of evidence (e.g., the police officer's section 23158.2[, subdivision (a)] report, live testimony) only if sworn, together with the absence of a similar statutory limitation on consideration of blood and urine test results, indicates a legislative intent that blood and urine test results may be admitted in a DMV administrative hearing despite a lack of certification under penalty of perjury.

> "We thus conclude a forensic laboratory report need not be sworn as a condition of admission into evidence at an administrative per se review hearing. So long as the forensic laboratory report complies with other statutory requirements, it becomes an 'official record' of the DMV and, though unsworn, is admissible in the administrative review hearing pursuant to section 14104.7.

> "This conclusion is consistent with the relaxation of evidentiary rules applicable in administrative hearings. A report prepared by a forensic laboratory properly licensed by the State of California (see tit. 17, Cal. Code Regs., § 1215 et seq.), though unsworn, 'is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs' (Gov. Code, § 11513, subd. (c)), and the admission of such evidence will facilitate the immediate removal of dangerous drivers from the road. The Legislature could reasonably have concluded that the formality of having forensic alcohol analysts swear under penalty of perjury to the accuracy of their test results, while unquestionably providing an additional layer of confidence the [blood-alcohol content] evidence is correct, could be dispensed with in administrative hearings at which no criminal penalties will be imposed.

"Finally, to the extent Lake contends the forensic laboratory report comprises insufficient evidence of his [blood-alcohol content] because it is inadmissible hearsay, we agree with the Court of Appeal below that the report falls within the public employees record exception to the hearsay rule. (Evid. Code, § 1280.) The report indicates it was prepared 'by and within the scope of duty of a public employee,' that it was done 'near the time of the act' of testing the urine sample, and the 'sources of information and method and time of preparation were such as to indicate its trustworthiness.' Drawing all logical and reasonable inferences in the trial court's favor [citation], we conclude sufficient evidence supports the finding Lake was driving with .08 [blood-alcohol content] or greater. Lake does not strongly argue otherwise." (*Lake, supra,* 16 Cal.4th at pp. 466-467.)

This statutory scheme again was addressed in *MacDonald v. Gutierrez* (2004) 32 Cal.4th 150 (*MacDonald*), which required the Supreme Court to resolve a dispute between different divisions of the Second District Court of Appeal. The arresting officer submitted a sworn statement to DMV to support the notice of order of suspension of MacDonald's driving privilege. The sworn statement did not include information necessary to permit DMV to uphold the suspension. The arresting officer, however, also submitted to DMV his nonsworn accident report, which contained the necessary information. The issue was whether DMV could rely on information contained in the accident report to affirm the suspension when the arresting officer completed both the sworn statement and the accident report. Divisions Two and Three of the Second District Court of Appeal reached opposite conclusions when addressing the issue.

The issue was different from the issue presented in *Lake* because in *Lake* different officers prepared the sworn statement and the accident report. The division holding the accident report in this situation was not admissible concluded, in essence, that since the arresting officer was required to complete the sworn statement, all relevant information must be included in that statement, and resort to the accident report to provide omitted information was not permitted. The Supreme Court disagreed.

"To resolve this case we must strike a balance between the two pertinent statutory provisions. While section 13380 provides that an officer

10.

making an arrest for driving under the influence of alcohol or drugs shall immediately forward to the DMV 'a *sworn* report of *all information relevant to the enforcement action*' (italics added), section 13557 provides that the DMV 'shall consider the sworn report submitted by the peace officer … *and any other evidence accompanying the report*' (italics added).

"The conclusion reached by the Court of Appeal in *Solovij* [*v. Gourley* (2001)] 87 Cal.App.4th 1229 and *Dibble v.* [*Gourley* (2002)] 103 Cal.App.4th 496—that the DMV may not consider an *unsworn* report by the *arresting* officers—is certainly arguable. However, given our conclusion in *Lake* that the DMV may consider an *unsworn* report by a *nonarresting* officer, it would be anomalous if it could not also consider an *unsworn* report by the *arresting* officer that is intended to supplement the officer's sworn report. Again, in an administrative hearing, '[a]ny relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs .…' [Citations.] 'A police officer's report, even if unsworn, constitutes "the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs."' [Citation.] Again, too, we must not lose sight of the reason for the 'slight relaxation of the rules of evidence applicable to an administrative per se review hearing,' a rationale we reiterated in *Lake*: '[T]he administrative per se laws are intended to provide an efficient mechanism whereby those persons who drive after consuming dangerous amounts of alcohol can have their driver's licenses quickly suspended so as to ensure they will not endanger the public by continuing to drive. [Citation.]' [Citation.]

"To summarize: Section 13380 provides the arresting officer's sworn report will contain 'all information relevant to the enforcement action.' Therefore, the Legislature clearly anticipates the sworn report will contain all or nearly all of the information necessary to remove the offender's license. In light of this legislative intent, the sworn report cannot be wholly devoid of relevant information. However, so long as a sworn report is filed, it is consistent with the relaxed evidentiary standards of an administrative per se hearing that technical omissions of proof can be corrected by an unsworn report filed by the arresting officer. In this case, the arresting officer filed a sworn report." (*MacDonald, supra,* 32 Cal.4th at pp. 158-159.)

***Identity***

With these statutes and cases in mind, we now turn to Kirschenmann's arguments.

First, he asserts there was insufficient admissible evidence to identify him as the driver of

his vehicle. Kirschenmann points out that, as in *Lake*, the officers responding to the scene did not observe him driving. Also as in *Lake*, witnesses at the scene observed Kirschenmann driving the vehicle and provided the information to the responding officers, who in turn included the witness statements in the accident report. Unlike *Lake*, however, Kirschenmann never admitted to the responding officers that he was driving the vehicle.

This last fact, Kirschenmann asserts, renders the finding that he was driving the vehicle unsupported by any evidence. The fallacy in Kirschenmann's argument is the implicit assumption that identity of the driver of the vehicle could be established only by eyewitness testimony. Even in criminal matters, in which the prosecution must prove the defendant's guilt by the standard of proof beyond a reasonable doubt (*In re Winship* (1970) 397 U.S. 358, 364), identity often is proven by circumstantial evidence (see, e.g., *People v. Rogers* (2006) 39 Cal.4th 826, 885-886).)

In determining whether there was sufficient circumstantial evidence to support the hearing officer's findings, we look at the entire record and do not focus on the lack of admission by Kirschenmann. The record establishes Kirschenmann was the owner of the vehicle that obviously was involved in an accident. He was present at the scene in an obviously intoxicated state. The scene of the accident strongly suggests the driver of the vehicle was intoxicated. There is nothing in the record to suggest there was a passenger in Kirschenmann's vehicle, or that someone other than Kirschenmann was driving the vehicle, or that the vehicle had been stolen. Kirschenmann did not present any evidence at the hearing to suggest that anyone other than himself drove the vehicle.

These facts, and absence of conflicting facts, would permit the hearing officer to reasonably and logically infer that Kirschenmann was the driver of the vehicle at the time of the accident. Indeed, these facts are similar to *Rogers* where the identity of the perpetrator was established from evidence that the victim had been murdered by being shot with a handgun, and Rogers possessed the murder weapon when he was arrested.

That evidence was sufficient to permit the jury to infer that Rogers was the perpetrator. Here, it was indisputable that someone drove the vehicle resulting in an accident, and Kirschenmann, as the owner of the vehicle and present at the scene, was in possession of the vehicle. This evidence was sufficient to allow the trier of fact to infer that Kirschenmann was the driver of the vehicle.

Government Code section 11513, subdivision (d) allows the hearing officer to rely on hearsay evidence to supplement or explain other evidence, but prohibits the hearing officer from relying *only* on hearsay evidence to support a finding. The circumstantial evidence in the record provided substantial evidence that Kirschenmann was the driver of the vehicle, and thus permitted the hearing officer to consider the hearsay statements contained in the report to supplement and explain the circumstantial evidence. Accordingly, we reject Kirschenmann's assertion that there was not substantial evidence in the record to identify him as the driver of his vehicle at the time of the accident.

### *Level of Intoxication–Time of Test*

Kirschenmann next argues the evidence did not establish he was intoxicated at the time of the accident. He asserts there is a lack of evidence to support the presumption found in section 23152, subdivision (b). This statute creates a rebuttable presumption that a person has 0.08 percent or more alcohol in his or her blood if the results of a chemical test performed within three hours of the driving show the driver's amount of alcohol in the driver's blood is greater than 0.08 percent. Kirschenmann argues the record does not contain substantial evidence that the breath test he provided was performed within three hours of the accident.

Kirschenmann's argument focuses on the sworn statement, which contains a section that requires an officer to explain the alleged offense. This section, for the most part, requires the police officer to fill in blanks and check appropriate boxes. One of the blanks the officer is required to fill in includes the date and time of the incident. Davenport inserted June 29, 2010, as the date of the incident, and 9:11 p.m. as the time of

the incident.  This section, as completed by Davenport, then indicates that Kirschenmann was driving the vehicle pursuant to the statement of the observer listed in the shaded area of the second page of the sworn statement.  The second page of the sworn statement lists the two witnesses to the accident in the shaded area.

The section on the first page of the sworn statement described in the preceding paragraph also contains a portion that Davenport could have completed, which indicates that the vehicle was involved in a collision.  When that portion is checked, the form directs the officer to attach a collision report and directs the officer to explain how the time of collision was established in the probable cause section on the second page of the sworn statement.

Kirschenmann argues that because Davenport did not check the portion of the sworn statement that is used when an accident occurs, and, consequently, did not explain in the probable cause section of the sworn statement report how the time of the collision was established, it is not possible to determine when the accident occurred, and the presumption established in section 23152, subdivision (b) does not apply.  The time listed by Davenport is unreliable, according to Kirschenmann, because it is the same time Davenport was dispatched to the scene of the accident.

The fallacy in this argument is twofold.  First, Kirschenmann seems to assert the only way to determine if the accident occurred within three hours of the breath test is through an explanation by Davenport in the sworn statement.  We review the entire record, which includes the accident report, in addition to the sworn statement.  In the accident report, Davenport explained that when he arrived at the scene he attempted to interview Kirschenmann and successfully interviewed two witnesses to the accident. Davenport then stated he was dispatched at 9:11 p.m. to the scene of an accident "which had just occurred."  This evidence was sufficient to establish that the accident occurred within the three-hour window provided by section 23152, subdivision (b), which was sometime between 7:34 p.m. and 9:11 p.m.

14.

The second reason the argument must be rejected is that section 23152 creates a rebuttable presumption that the defendant had a blood-alcohol content greater than 0.08 percent if the test was performed within three hours of the time the defendant drove. A presumption, however, is not the only way to establish a fact.

Here, Davenport was dispatched to the scene of an accident at 9:11 p.m. He took Kirschenmann into custody shortly thereafter, and he administered a breath test at 10:34 p.m., which established Kirschenmann's blood-alcohol content was over twice the legal limit. The level of alcohol in Kirschenmann's blood would dissipate with the lapse of time. There is no evidence that Kirschenmann consumed any alcoholic beverages between the time of the accident and when the breath test was administered. These facts lead to the inescapable conclusion that Kirschenmann was intoxicated at time of the accident, without resort to the section 23152 presumption.

### *Intoxication–Incomplete Sworn Statement*

As explained above, the sworn statement contains sections that require the police officer to fill in blanks and check appropriate boxes. One such section pertains to the results of the breath test used to establish the level of alcohol in the blood. This section indicates (1) the test occurred on June 29, 2010, in the afternoon or evening (p.m.), (2) Davenport tested Kirschenmann using a breath test machine (and also includes Davenport's certification under penalty of perjury that the test samples were obtained in the regular course of the officer's duties), and (3) Davenport was qualified to operate the test equipment.

Davenport omitted from this section the test results, as well as the time the test took place.

In another section of the sworn statement, Davenport indicated he observed objective symptoms of Kirschenmann's intoxication, including unsteady gait, slurred speech, bloodshot/watery eyes, and the odor of alcoholic beverages. Each of these observations was indicated by marking the appropriate box on the sworn statement. This

15.

section also required Davenport to state the identity of the person who made the observation and at what time the observations were made. Davenport indicated on the form that he made these observations, but failed to state the time.

Kirschenmann asserts that these three omissions (test results, time of test, and time of observations) on the sworn statement violate the requirements of section 13380 and *MacDonald*. Once again, there is no merit to the argument.

When a police officer arrests someone for driving with a blood-alcohol content of 0.08 percent or higher, section 13380, subdivision (a) imposes a duty on that officer to "immediately forward to the [DMV] a sworn report of all information relevant to the enforcement action, including" (1) the identity of the person arrested, (2) a statement of the grounds for believing the person violated the statute, (3) a report of the chemical test results, (4) a copy of the notice to appear if the person is released from custody, and, if available, (5) a copy of the complaint filed with the court. Subdivision (b) of this section mandates the information be provided on a form provided by DMV.[4] The sworn statement is the form provided by DMV.

---

[4]Section 13380 states in full: "(a) If a peace officer serves a notice of an order of suspension pursuant to Section 13388, or arrests any person for a violation of Section 23140, 23152, or 23153, the peace officer shall immediately forward to the department a sworn report of all information relevant to the enforcement action, including information that adequately identifies the person, a statement of the officer's grounds for belief that the person violated Section 23136, 23140, 23152, or 23153, a report of the results of any chemical tests that were conducted on the person or the circumstances constituting a refusal to submit to or complete the chemical testing pursuant to Section 13388 or 23612, a copy of any notice to appear under which the person was released from custody, and, if immediately available, a copy of the complaint filed with the court. For the purposes of this section and subdivision (g) of Section 23612, 'immediately' means on or before the end of the fifth ordinary business day following the arrest, except that with respect to Section 13388 only, 'immediately' has the same meaning as that term is defined in paragraph (3) of subdivision (b) of Section 13388. [¶] (b) The peace officer's sworn report shall be made on forms furnished or approved by [DMV]. [¶] (c) For the purposes of this section, a report prepared pursuant to subdivision (a) and received pursuant to subdivision (a) of Section 1801, is a sworn report when it bears an entry identifying the

While section 13380, subdivision (a) requires a report of the test results, and the information must be in the sworn statement, this section does not state the information must be provided on the first page of the form in a specific blank. This is significant, because on page two of the sworn statement, Davenport included in his written summary the results of the breath test.

Moreover, contrary to an argument Kirschenmann appears to be making, Davenport certified under penalty of perjury all of the information contained in the sworn statement, not just the information on the first page where his signature appears. The DMV form states above the signature line that the officer is certifying "under penalty of perjury, under the laws of the State of California, that the information *contained on all pages* of this Officer's Statement is true and correct." (Italics added.) Accordingly, the sworn statement contains a report of the chemical test results as required by section 13380.

The time the test was taken does not appear on the sworn statement, but this omission is hardly fatal. Section 13380 requires a report of the test results be on the sworn statement, but it does not require the time the test was taken to be on the form. As stated above, the accident report prepared by Davenport does state the time the test was administered, and this information is admissible because Davenport administered the test himself. Because the accident report is admissible under the public employees' record exception to the hearsay rule (*Lake, supra,* 16 Cal.4th at p. 460), Kirschenmann has no grounds to object to this evidence.

The final omission cited by Kirschenmann, the time Davenport observed Kirschenmann exhibit the signs of intoxication, similarly is not required by section 13380. Therefore, the omission of this information on the sworn statement is not fatal.

maker of the document or a signature that has been affixed by means of an electronic device approved by [DMV]."

17.

Moreover, the hearing officer easily could deduce from the accident report the approximate time of the observations, since Davenport was not dispatched to the scene until 9:11 p.m. and the test was administered at 10:34 p.m. The only logical inference to be drawn from these facts is that Davenport's observations must have occurred between these two times. Moreover, since probable cause for the stop was not contested, the time of the observations was irrelevant.

Finally, Kirschenmann cites the portion of *MacDonald* that requires the sworn statement not be "wholly devoid of relevant information," and must contain "all or nearly all of the information necessary to remove the offender's license." (*MacDonald, supra,* 32 Cal.4th at p. 159.) He asserts the omissions violated this requirement.

We disagree. As explained, the only two omissions on the sworn statement—the time Davenport observed the objective signs of intoxication and the time of the breath test—were technical omissions that were only tangentially relevant to the proceedings.[5] The sworn statement identified Kirschenmann as the driver of the vehicle, explained why Davenport concluded he had reasonable cause to suspect Kirschenmann was intoxicated, informed DMV that Kirschenmann had been arrested, and reported the results of breath test. (§ 13557, subd. (b)(1)(A-C).) This is "all or nearly all of the information necessary to remove" Kirschenmann's license. The requirements of *MacDonald* were not violated.

## DISPOSITION

The order of the trial court denying the petition for a writ of mandate is affirmed.

---

[5]This is not to suggest that police officers should omit information from the form. Each officer should endeavor to be as complete as possible to avoid the potential of reversal of an otherwise valid suspension.

18.