Filed 4/23/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANTHONY FRANK ROMANE, JR., | D083569 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2023-00017624-CU-WM-CTL) |
| DEPARTMENT OF MOTOR VEHICLES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Carolyn M. Caietti, Judge. Request for judicial notice denied. Reversed.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Alice Quinton, Rima Sawhney and Rebecca O'Grady, Deputy Attorneys General, for Defendant and Appellant.

Middlebrook & Associates, Richard O. Middlebrook and Gabrielle A. Burnett, for Plaintiff and Respondent.

Under California's implied consent law, any person who drives a motor vehicle is deemed to have consented to chemical testing of their blood or breath for the purpose of determining their blood alcohol content if they are lawfully arrested for driving under the influence. (*Troppman v. Valverde* (2007) 40 Cal.4th 1121, 1129–1130; see Veh. Code,[1] §§ 23612, subd. (a)(1)(A), 23152.) If a driver refuses to submit to or complete chemical testing in this circumstance, the Department of Motor Vehicles (DMV) may suspend the driver's license for one year. (§ 13353, subd. (a)(1).)

The driver may challenge the license suspension by requesting an "administrative per se" (APS) hearing. (§ 13558, subd. (a).) The APS hearing is an informal proceeding where the rules of evidence are relaxed. (*Lake v. Reed* (1997) 16 Cal.4th 448, 462 (*Lake*).) It is designed "to provide an efficient mechanism whereby those persons who drive after consuming dangerous amounts of alcohol can have their driver's licenses quickly suspended so as to ensure they will not endanger the public by continuing to drive." (*Ibid.*)

Although the APS proceedings are streamlined and relatively informal, the driver remains entitled to the minimum protections of due process. A few years ago, in *California DUI Lawyers Association v. Department of Motor Vehicles* (2022) 77 Cal.App.5th 517 (*DUI Lawyers*), our colleagues in the Second Appellate District, Division Four concluded that a driver's due process right to an impartial adjudicator is violated when the roles of DMV advocate and decision maker are combined into one hearing officer. (*Id.* at pp. 532–533.)

In this case, the DMV initiated proceedings to suspend Anthony Frank Romane, Jr.'s license because he refused to submit to chemical testing after being arrested for driving under the influence. Romane exercised his right

---

[1] Further undesignated statutory references are to the Vehicle Code.

to an APS hearing, which ultimately took place months after *DUI Lawyers* was decided. The hearing officer made clear that she understood her role was limited to being a trier of fact, not an advocate. She introduced three documents into evidence—the arresting officer's sworn report on a standard DMV form (DS 367), his unsworn arrest report, and Romane's driving record. She also admitted the bodyworn camera footage Romane offered into evidence, heard uninterrupted argument from Romane's counsel, and took the matter under submission. There was no live testimony. In a written decision, the hearing officer sustained the suspension of Romane's license.

Romane then filed a petition for writ of administrative mandate in the superior court, seeking an order restoring his license on grounds that the hearing officer advocated in violation of his due process rights as explained in *DUI Lawyers*. The superior court agreed and ordered the DMV to set aside the suspension unless and until it conducted a rehearing before a different hearing officer and with a separate individual acting as DMV advocate.

The DMV appeals, contending the APS hearing officer did not act as an advocate. Rather, she simply introduced a few documents that are admissible and routinely considered at these hearings. With the benefit of recent appellate decisions applying *DUI Lawyers* to the records of particular APS proceedings, we agree with the DMV that the hearing officer was merely collecting and developing evidence, not advocating, which is constitutionally permissible. We therefore reverse and remand to the superior court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Late one night in April 2021, a San Diego police officer responded to a call that a man was "slumped over" in his car at an intersection. The officer found Romane unconscious in the driver's seat of his car. He banged on his

window to rouse him. Romane woke up disoriented and "stumbled" out of his car, without putting it into park. After asking a few questions, the officer noticed that Romane's speech was slurred, his eyes were bloodshot and watery, his gait was unsteady, and his breath smelled of alcohol. Romane admitted to drinking a glass of wine that evening. The officer administered several field sobriety tests and Romane failed each one. He was arrested for driving under the influence of alcohol. The officer read Romane his *Miranda*[2] rights, and he claimed to not understand them. When the officer and his partner tried to clarify, Romane insisted it did not matter whether or not he confirmed he understood his rights.

At the police station, Romane maintained he did not understand his *Miranda* rights. The officer then read him the "Chemical Test Admonition" from the DS 367 form, explaining that he was required by state law to submit to a blood or breath test to determine his blood alcohol content, and that if he refused, his driving privilege would be suspended for one year or revoked for two or three years by the DMV. The admonition clarified that he did not have the right to speak to an attorney or have an attorney present before stating whether he would submit to a test, before deciding which test to take, or during the test. Romane answered "no" when asked if he would take a blood or a breath test.

Copies of the officer's completed DS 367 form—which includes a narrative of the arrest and confirms that Romane refused all testing—were provided to the DMV and to Romane. Romane's copy informed him that, in 30 days, his driver's license would be suspended for one year, and that he had 10 days to request an APS hearing to show that suspension was not justified. Romane timely requested a hearing.

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436.

4

The APS hearing began on December 19, 2022 before Driver Safety Hearing Officer Trena Leota. At the outset of the hearing, Romane's counsel sought clarification on how the hearing would proceed "in light of the appellate court ruling on the separation of advocate from hearing officer." Leota explained that she would be the sole hearing officer,[3] and she would act as a trier of fact only, not as an advocate. She then attempted to introduce three exhibits into evidence: (1) the arresting officer's sworn DS 367 form; (2) his unsworn arrest report (which included a two-page "DUI arrest supplemental" report); and (3) Romane's driving record.

Romane's counsel had no issue with the driving record, but he objected at length to the other documents. Counsel essentially contended that offering evidence against Romane meant Leota was acting as an advocate, in violation of *DUI Lawyers, supra*, 77 Cal.App.5th 517. Leota clarified that, "per the Director of the Department, this is how we're going forward with our APS Hearings right now." She was otherwise unable to rule on counsel's objection. At counsel's suggestion, the hearing was continued to allow Leota to seek guidance from the DMV.

At the continued hearing in March 2023, Leota advised counsel that ruling on his objection—deciding the legality of the proceeding itself—was beyond the scope of her duties, but Romane could seek writ review. She maintained that she was not advocating. She was "simply giving the documents that I have that have been signed under penalty of perjury, and that is how I will go forward with the hearing." Romane's counsel reiterated

---

[3] At an earlier point in the proceedings, Romane received notice suggesting there would be two DMV employees at the hearing—one acting as advocate and another acting as trier of fact. At Romane's request, that hearing was continued to December 19, 2022, and the notice of the continued hearing no longer indicated an advocate would be present.

5

his due process objection, and further objected to the arrest report based on the fact that it was not signed under penalty of perjury. Leota ultimately overruled the objections and admitted the three documentary exhibits into evidence. She then asked counsel whether he wanted her to introduce the defense exhibit—bodyworn camera footage of the *Miranda* and chemical test admonishments, which counsel provided to the DMV in advance of the hearing. Counsel chose to introduce the exhibit himself and Leota admitted it into evidence without objection. Counsel was then invited to present his case. The thrust of his argument was that the chemical test admonishment was confusing because it followed the *Miranda* advisement—which told Romane he had the rights to remain silent and to an attorney—and it was unclear—the officer stumbled over his words, repeated words, and misstated words—such that Romane's refusal to test could not be held against him. Leota thanked counsel and took the matter under submission.

In April 2023, Leota issued a written "Notification of Findings and Decision." She determined that the officer had reasonable cause to believe Romane was driving under the influence, and lawfully arrested him. Leota confirmed that she reviewed the bodyworn camera footage and found that the officer admonished Romane that his license would be suspended or revoked if he refused to complete chemical testing "clearly and verbatim from the DS-367" form. She noted that Romane "appeared coherent and did not relay any confusion after the admonition was read," and plainly declined to submit to testing. Leota therefore reimposed the one-year suspension of Romane's driver's license (which had been stayed pending the hearing).

Romane sought review by filing a petition for writ of administrative mandate in the superior court, seeking an order directing the DMV to set aside his license suspension on grounds that the DMV violated his right to

6

due process by having just one hearing officer act as advocate and adjudicator at his APS hearing. He maintained that Leota acted as an advocate by introducing evidence against him. In addition, he claimed that the evidence did not support Leota's findings that he refused to submit to chemical testing following a proper admonishment.

In response, the DMV asserted that Leota merely collected and developed evidence—which, as the *DUI Lawyers* court recognized, is investigation not advocacy—and then rendered a decision. The DMV further argued that the record supported Leota's factual findings.

The superior court granted the writ petition "in part." It determined that Leota acted as both advocate and factfinder in violation of Romane's federal and state due process rights. As the court reasoned, Leota "did more than develop the facts and render a final decision" insofar as she "presented the DMV's case by submitting exhibits into evidence," yet she "did not present any evidence for [Romane], like the body warn camera footage."[4] On that basis, the court ordered the DMV to set aside Romane's license suspension[5] pending a new hearing before a "different hearing officer and with a separate prosecutor screened from any ex parte communication with the hearing officer on any substantive matter at issue in the proceeding." The court did not reach the sufficiency of the evidence issue.

[4] The superior court also noted that Leota "promoted driver safety," referencing the first page of her "Notification of Findings and Decision" where she explains why the police officer had "probable cause to contact" Romane. It is not clear what the court meant on this point.

[5] The superior court had previously granted Romane's request to stay the license suspension pending the writ proceedings.

7

**DISCUSSION**

The DMV appeals the superior court's order granting Romane's writ petition. It maintains that Leota merely collected standard items of evidence—routine documents typically admitted at these APS hearings—which does not amount to advocacy. It asserts that Leota otherwise acted as an unbiased adjudicator. For reasons we explain, we agree with the DMV.

**A.** ***A Driver Is Denied Their Due Process Right to an Impartial Adjudicator When an APS Hearing Officer Simultaneously Acts as an Advocate for the DMV and as a Trier of Fact***

" 'When, as here, an administrative agency conducts adjudicative proceedings, the constitutional guarantee of due process of law requires a fair tribunal. [Citation.] A fair tribunal is one in which the judge or other decision maker is free of bias for or against a party.' " (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 215 (*Today's Fresh Start*).) "Absent a financial interest, adjudicators are presumed impartial. [Citations.] To show nonfinancial bias sufficient to violate due process, a party must demonstrate actual bias or circumstances ' "in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." ' " (*Id*. at p. 219.)

"[T]he general rule endorsed by both the United States Supreme Court and [the California Supreme Court] is that '[b]y itself, the combination of investigative, prosecutorial, and adjudicatory functions within a single administrative agency does not create an unacceptable risk of bias and thus does not violate the due process rights of individuals who are subjected to agency prosecutions.' " (*Today's Fresh Start, supra*, 57 Cal.4th at p. 221.) "To prove a due process violation based on overlapping functions thus

8

requires *something more* than proof that an administrative agency has investigated and accused, and will now adjudicate." (*Ibid.*, italics added.)

The party asserting bias bears the burden of coming forward with " 'specific evidence' " or " 'concrete facts' " showing actual bias or a particular combination of circumstances creating an unacceptable risk of bias. (*Today's Fresh Start, supra*, 57 Cal.4th at p. 221.) "Otherwise, the presumption that agency adjudicators are people of ' "conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances" ' will stand unrebutted." (*Id.* at pp. 221–222.)

In *DUI Lawyers, supra*, 77 Cal.App.5th 517, the court considered whether this "something more" was established by evidence that the DMV combined advocacy and adjudicatory roles into a *single DMV employee*. (*Id.* at p. 530.) The case involved a taxpayer action brought by the California DUI Lawyers Association and an attorney (collectively, CDLA) against the DMV and its director challenging the APS hearing system. (*Id.* at p. 523.) Among other claims, CDLA alleged that the system violated drivers' procedural due process rights under the state and federal constitutions insofar as the DMV's written policies and procedures—reflected in its "driver safety manual" (DSM)—mandated that hearing officers simultaneously act as advocates for the DMV and as triers of fact, creating an obvious and inherent conflict of interest and bias in favor of the DMV. (*Id.* at pp. 523, 526–527.) The trial court granted the DMV's motion for summary adjudication, finding that the hearing officers' dual role did *not* violate due process, but the appellate court reversed. (*Id.* at p. 524.)

*DUI Lawyers* held that "[a]lthough procedural fairness does not prohibit the combination of the advocacy and adjudicatory functions within a *single administrative agency*, tasking the *same individual* with both roles

9

violates the minimum constitutional standards of due process. The irreconcilable conflict between advocating for the agency on one hand, and being an impartial decision maker on the other, presents a ' "particular combination of circumstances creating an unacceptable risk of bias." ' " (*DUI Lawyers, supra*, 77 Cal.App.5th at p. 532, italics added.) In so holding, the appellate court noted (and CDLA conceded) that "the DMV may task the same person with both *collecting and developing the evidence* and rendering a final decision." (*Id.* at p. 533, fn. 5, italics added, citing *Today's Fresh Start, supra*, 57 Cal.4th at p. 220 ["The same individual in an administrative agency may be tasked with 'developing the facts and rendering a final decision' "].) It emphasized, however, that the hearing officer must refrain "from *advocating* on behalf of the DMV as the DSM currently mandates (i.e., present the DMV's case and 'promote driver safety,' with no corresponding duty to present any evidence that would support the position of the driver at the hearing)." (*DUI Lawyers*, at p. 533, fn. 5.)

Ultimately, *DUI Lawyers* reversed and remanded with directions for the trial court to grant summary judgment in favor of CDLA, and include language in its judgment permanently enjoining and restraining the DMV "from having its APS hearing officers function as advocates for the position of the DMV in addition to being finders of fact in the same adversarial proceeding." (*DUI Lawyers, supra*, 77 Cal.App.5th at p. 538.) It also deemed section 14112, subdivision (b) "unconstitutional to the extent it permits the DMV to combine the advocacy and adjudicatory roles in a single APS hearing officer." (*DUI Lawyers*, at p. 533.) That provision states that Government Code section 11425.30, subdivision (a)—which in turn prohibits someone from serving "as presiding officer in an adjudicative proceeding" if they have "served as investigator, prosecutor, or advocate in the proceeding or its

10

preadjudicative stage"—does not apply to proceedings "for issuance, denial, revocation, or suspension of a driver's license pursuant to this division" (Veh. Code, § 14112, subd. (b)).[6]

Since *DUI Lawyers* was a taxpayer action challenging the DMV's policies and procedures in the abstract, the court had no occasion to apply its holding to any particular APS hearing. Two years later, in *Knudsen v. Department of Motor Vehicles* (2024) 101 Cal.App.5th 186 (*Knudsen*), our colleagues in the Fifth Appellate District confronted that task.

The *Knudsen* court decided that when a driver is arguing that their due process right to an impartial hearing officer was violated, the reviewing court must assess "the administrative record and the revocation decision to see if the public hearing officer actually acted as both an adjudicator *and* an advocate, or merely acted as an adjudicator and a collector and developer of evidence." (*Knudsen, supra*, 101 Cal.App.5th at p. 193.) "If the relevant documents demonstrate that the public hearing officer did not act as an advocate, then the driver's due process right to an impartial adjudicator was not violated, and the constitutional issue is resolved." (*Ibid*.) On the other hand, "[i]f the relevant documents demonstrate that a public hearing officer

---

[6] Effective July 1, 2024, the regulations applicable to APS hearings were amended to clarify that, consistent with *DUI Lawyers*, a hearing officer "is not an advocate for the" DMV but rather "a neutral decision-maker" who "may investigate, gather evidence, and subpoena witnesses as necessary to make an accurate determination and obtain complete information regarding the case." (Cal. Code Regs., tit. 13, § 115.01, subd. (b)(1) & (2); see also *id*., § 115.00 ["Sections 115.00 through 115.15 of this article are applicable to hearings conducted before the department pursuant to Article 3 (commencing with Section 14100) of Chapter 3 of Division 7"]; Veh. Code, § 13558, subd. (a) [hearings are conducted "pursuant to Article 3 (commencing with Section 14100) of Chapter 3, except as otherwise provided in this section"].) The parties have not advised us whether the DSM was updated accordingly.

actually acted as an advocate, then the driver's due process right to an impartial adjudicator is violated." (*Ibid*.)  The *Knudsen* court considered the latter circumstance to constitute structural error entitling the driver "to a new APS hearing before a constitutionally impartial adjudicator."  (*Ibid*.)

Applying this framework to the record before it, the *Knudsen* court concluded that the hearing officer acted as both an adjudicator *and* an advocate, entitling the driver to a new APS hearing.  (*Knudsen, supra*, 101 Cal.App.5th at p. 193.)  In that case, the driver presented the testimony of a toxicologist who opined it was "apparent" and "clear" that his blood alcohol content was under .08 percent at the time of driving based on his chemical test results and the absence of objective signs of intoxication.  (*Id*. at pp. 208–209.)  The hearing officer asked the expert several questions that seemed designed to undermine, discredit, and mischaracterize—as opposed to develop—the expert's testimony.  (*Id*. at pp. 209–212.)  Moreover, the hearing officer's written decision relied on irrelevant "weaknesses" in the expert's testimony, mischaracterized that testimony on multiple points, and made a clear legal error in favor of the DMV.  (*Id*. at pp. 211–212.)  Based on the totality of the circumstances, the *Knudsen* court determined that the hearing officer acted as an advocate for the DMV.  (*Id*. at pp. 212–213 & fn. 13.)

In *Clarke v. Gordon* (2024) 104 Cal.App.5th 1267 (*Clarke*), Division Three of this court followed the approach laid out in *Knudsen*.  (*Clarke*, at p. 1270.)  At the APS hearing in that case, the hearing officer introduced and admitted into evidence three exhibits:  (1) a standard form used by law enforcement that includes a chemical test admonishment; (2) the arresting officer's report; and (3) the driver's driving record.  (*Id*. at pp. 1271–1272.)  The driver then testified in his own defense, explaining that he was confused by the chemical test admonition and why he could not consult an attorney.

12

(*Id*. at pp. 1272–1273.)  The hearing officer "rigorously cross-examined" the driver, asking multiple times in various ways whether the arresting officer told him he did not have the right to speak to an attorney, and twice interrupting his responses.  (*Id*. at pp. 1273–1274, 1277.)  Indeed, the manner of questioning prompted the driver's counsel to object that the hearing officer was advocating.  (*Id*. at p. 1274.)  "Considering [the hearing officer's] performance in its totality," the *Clarke* majority concluded that she "assumed the prohibited dual roles of both adjudicator and advocate."  (*Id*. at p. 1277.)  The majority agreed with *Knudsen* that this due process violation amounted to structural error, and therefore reversed and remanded with directions for the trial court to grant the driver's writ petition.  (*Clarke*, at p. 1277.)[7]

Recently, in *Kazelka v. Department of Motor Vehicles* (2025) 109 Cal.App.5th 1239 (*Kazelka*), the First Appellant District, Division Three applied the *Knudsen* framework and concluded the hearing officer did *not* act as an advocate and an adjudicator.  (*Id*. at pp. 1254–1256.)  The driver in *Kazelka* submitted to a preliminary alcohol screening (PAS) test, which showed results of .11 and .10 percent blood alcohol content.  In advance of the APS hearing, the hearing officer issued two subpoenas to law enforcement seeking records regarding the maintenance of the PAS device.  (*Id*. at pp. 1245, 1255.)  Then, at the hearing, the officer admitted the PAS device records, which the appellate court characterized as the type of evidence "that would likely be entered into evidence in any APS hearing," without objection

_____

7    In a dissenting opinion, Justice Delaney disagreed that the hearing officer advocated.  (*Clarke, supra*, 104 Cal.App.5th at p. 1278 (dis. opn. of Delaney, J.).)  In his view, to the extent the hearing officer presented evidence in support of the license suspension, she was merely developing the factual record.  (*Ibid*.)  And as Justice Delaney interpreted the transcript of the examination of the driver, the hearing officer was reasonably clarifying his testimony, which was somewhat contradictory and unclear.  (*Ibid*.)

from counsel. (*Id.* at pp. 1255–1256.) The officer did not mischaracterize any evidence, ask leading questions of the sole witness, or otherwise display actual bias. (*Id.* at p. 1255) On that record, the court held no due process error occurred. (*Id.* at p. 1256.)

## B. *The Hearing Officer Did Not Act as an Advocate in this Case*

Turning to the record in this case, and in contrast to both *Knudsen* and *Clarke,* we conclude that Leota did *not* cross the line into advocacy. (See *Hall v. Superior Court* (2016) 3 Cal.App.5th 792, 808 ["A challenge to the procedural fairness of the administrative hearing is reviewed de novo on appeal because the ultimate determination of procedural fairness amounts to a question of law"].) To be sure, she introduced and admitted into evidence the sworn DS 367 form and the unsworn arrest report over Romane's objection. But as the DMV points out, these documents are appropriately and routinely admitted into evidence at APS hearings.

Where, as here, a law enforcement officer arrests someone for driving under the influence of alcohol (§ 23152), the officer must immediately forward to the DMV "a sworn report of all information relevant to the enforcement action, including information that adequately identifies the person, a statement of the officer's grounds for belief that the person" drove under the influence, and "the circumstances constituting a refusal to submit to or complete" chemical testing. (§ 13380, subd. (a).) This sworn report "shall be made on forms furnished or approved by the" DMV—such as the DS 367 form. (*Id.*, subd. (b); see also *Lake, supra*, 16 Cal.4th at p. 457.)[8] In turn, the DMV conducts an automatic internal review of the merits of the suspension

---

[8] *Lake* was interpreting former section 23158.2, which was repealed and replaced with section 13380 without substantive change. (Stats. 1998, ch. 118, §§ 3.24, 30.5 (Senate Bill No. 1186) operative July 1, 1999.)

based on the sworn report "and any other evidence accompanying the report." (§ 13557, subd. (a); see also *Lake*, at pp. 455, 457.)

In addition to or instead of this automatic review, the driver may request an APS hearing. (See §§ 13557, subd. (e), 13558, subd. (a).) At the hearing, "the universe of potentially available evidence is enlarged, for '[a]ny evidence at the hearing shall not be limited to the evidence presented at' " the automatic review. (*Lake, supra,* 16 Cal.4th at p. 458, quoting § 13558, subd. (b).) The DMV's "official records" must be considered and "sworn testimony" may be taken. (§ 14104.7; see also § 13558, subd. (a) [hearings are governed by § 14100 et seq. except as otherwise provided in § 13558].) And generally, the hearing need not be conducted according to the technical rules of evidence. (Gov. Code, § 11513, subd. (c); see also Veh. Code, § 14112, subd. (a) [all matters not covered by Veh. Code, § 13800 et seq. are governed by Gov. Code, § 11500 et seq.].) "Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." (Gov. Code, § 11513, subd. (c).)

The Supreme Court has long held that this statutory scheme allows a hearing officer to consider an arresting officer's sworn statement (the DS 367 form) as well as an unsworn police report from an arresting or nonarresting officer at an APS hearing. (*Lake, supra,* 16 Cal.4th at pp. 461–462; *MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 152–153 (*MacDonald*).) As the Supreme Court explained in *Lake*, the relevant statutory provisions contemplate that a hearing officer may consider these reports because, in the automatic internal review, the DMV is required to evaluate the sworn report " 'and any other evidence accompanying the report,' " and "even more

15

evidence will be available in a contested review hearing as compared to the" DMV's automatic review.  (*Lake*, at pp. 459–460, italics omitted.)  Moreover, even if unsworn, a police report is " 'the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs.' "  (*Id*. at pp. 460–461.)

The law has also long been clear that sworn DS 367 reports and unsworn police reports are admissible at APS hearings pursuant to the public records hearsay exception (Evid. Code, § 1280), which is designed " 'to eliminate the calling of each witness involved in preparation of the record and substitute the record of the transaction instead.' "  (*Gananian v. Zolin* (1995) 33 Cal.App.4th 634, 639; *Lake, supra*, 16 Cal.4th at pp. 461–462.)

Given these settled authorities, coupled with the generally informal nature of an APS hearing, the DMV's case is typically made by introducing the few documents provided by law enforcement.  (See *Lake, supra*, 16 Cal.4th at pp. 451–452; *Gerwig v. Gordon* (2021) 61 Cal.App.5th 59, 65.)  Indeed, the DMV's characterization of the sworn DS 367 report and the arrest report as routine documents appears fair in light of the sheer number of published cases where such documents were admitted into evidence at an APS hearing.[9]

---

[9]    See, e.g., *Lake, supra*, 16 Cal.4th at page 453; *MacDonald, supra*, 32 Cal.4th at page 154; *Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1205; *Evans v. Gordon* (2019) 41 Cal.App.5th 1094, 1098–1099; *Murphey v. Shiomoto* (2017) 13 Cal.App.5th 1052, 1058–1060; *Lane v. Valverde* (2012) 203 Cal.App.4th 71, 76; *Lee v. Valverde* (2009) 178 Cal.App.4th 1069, 1072; *Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 984; *Miyamoto v. Department of Motor Vehicles* (2009) 176 Cal.App.4th 1210, 1214; *Bussard v. Department of Motor Vehicles* (2008) 164 Cal.App.4th 858, 861–862; *Hildebrand v. Department of Motor Vehicles* (2007) 152 Cal.App.4th 1562, 1569; *Roze v. Department of Motor Vehicles* (2006) 141 Cal.App.4th 1176, 1179–1180.

Accordingly, we conclude that where, as here, a hearing officer merely introduces the documents that law enforcement duly forwarded to the DMV, which are routinely admitted into evidence at APS hearings, the officer is merely collecting and developing evidence, not advocating for the DMV.

In recognizing "the DMV may task the same person with both collecting and developing the evidence and rendering a final decision" *DUI Lawyers* (77 Cal.App.5th at p. 533, fn. 5), references *Today's Fresh Start*, which in turn indicates that collecting and developing evidence constitutes investigation, not advocacy, and there is no due process violation in combining investigatory and adjudicatory roles into one individual (*Today's Fresh Start, supra*, 57 Cal.4th at pp. 220–221, citing, inter alia, *Withrow v. Larkin* (1975) 421 U.S. 35, 52 (*Withrow*) [" '[t]he case law, both federal and state, generally rejects the idea that the combination [of] judging [and] investigating functions is a denial of due process' "]; *Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575, 1581 (*Howitt*) ["The mere fact that the decision maker or its staff is a more active participant in the factfinding process—similar to the judge in European civil law systems—will not render an administrative procedure unconstitutional."]).

Combining advocacy and adjudicatory roles into one person creates an intolerable risk of bias because an advocate, by definition, "is a partisan for a particular client or point of view" which is inherently "inconsistent with true objectivity, a constitutionally necessary characteristic of an adjudicator." (*Howitt, supra*, 3 Cal.App.5th at p. 1585.)  The same risk is not presented by combining investigative and adjudicative roles.  Generally, "[t]he mere exposure to evidence presented in nonadversary investigative procedures is

17

insufficient in itself to impugn the fairness of the [decisionmaker] at a later adversary hearing."[10] (*Withrow, supra*, 421 U.S. at p. 55.)

We otherwise detect no evidence of advocacy on the record before us. After receiving the DS 367 form, the arrest report, and the driver's record into evidence, Leota admitted Romane's evidence—the bodyworn camera footage—without objection or issue. In its order granting Romane's writ petition in part, the superior court noted that Leota "did not present any evidence for [Romane], like the body worn camera footage." The transcript of the APS hearing, however, reflects that Leota offered to introduce the footage into evidence, but Romane's counsel elected to introduce it himself. Given this context, the fact that Leota did not admit the footage herself does not, in our view, indicate she was advocating for the DMV.

Immediately after admitting the footage into evidence, Leota heard uninterrupted argument from Romane's counsel and took the matter under submission. Unlike *Knudsen* and *Clarke*, there was no live testimony with cross-examination. Leota's written decision reflects that she gave due consideration to Romane's argument and evidence. She specifically recounted counsel's argument that the arresting officer "induced confusion" by giving a " 'tortured reading' " of the chemical test admonition after reading Romane his *Miranda* rights. But upon reviewing the bodyworn footage, she found that the officer read the admonition "clearly and verbatim from the DS-367" and that Romane "appeared coherent and did not relay any confusion

---

10    Because the facts of this case only involve the admission of standard and routine items of evidence, we have no occasion to consider whether an APS hearing officer might veer into an advocacy role when attempting to introduce an *unusual* exhibit into evidence—for instance, evidence that the hearing officer sought out independent of law enforcement and which required novel legal argument as to its admissibility.

after the admonition was read." Having reviewed the footage ourselves, we cannot say this is an unfair interpretation. Similar to the appellate court in *Kazelka*, we conclude there was no violation of Romane's due process rights where the hearing officer did nothing more than introduce routine documents into evidence.

Romane offers several arguments in support of a contrary conclusion, but we find none of them persuasive. First, he contends that because the only evidence the DMV is *required* to consider at an APS hearing is the driver's record—which he concedes constitutes an "official record" of the DMV within the meaning of section 14104.7—introducing any other evidence requires some exercise of discretion, and deciding what evidence to introduce is the role of an advocate. This argument, if accepted, would effectively collapse investigation into advocacy. It is difficult to imagine what collecting and developing evidence would look like if it did not include putting forward the minimal documents that law enforcement duly transmitted to the DMV, which gave rise to the license suspension proceedings in the first place.

Second, Romane urges us not to follow the analysis articulated in *Knudsen*. As an initial point, he highlights that *Knudsen* did not involve an APS hearing conducted after *DUI Lawyers*. But the fact that *DUI Lawyers* was decided after the hearing (and during the writ proceedings) in *Knudsen*, but before the hearing in this case, is an immaterial distinction. On review, the analysis is the same: whether the administrative record indicates that the hearing officer *actually acted* as an adjudicator and advocate, or merely an adjudicator and collector and developer of evidence. (*Knudsen, supra*, 101 Cal.App.5th at p. 193.)

More substantively, Romane asserts that *Knudsen* is poorly reasoned and conflicts with *DUI Lawyers*. We disagree. *DUI Lawyers* concluded that

19

"combining the roles of advocate and adjudicator in a single person employed by the DMV violates due process under" the federal and state constitutions. (*DUI Lawyers, supra*, 77 Cal.App.5th at p. 532.) *Knudsen* appreciated that *DUI Lawyers* was based on written DMV policy, but "in an actual case, it may be that a public hearing officer did not actually act as an advocate despite the DMV's stated policy." (*Knudsen, supra*, 101 Cal.App.5th at p. 206.) Indeed, in this case, Leota expressly stated she would *not* act as an advocate.

Since the DMV's case is "often be established through the submission of documents," the *Knudsen* court could easily imagine cases where the hearing officer merely collects and develops evidence and renders a decision without actually advocating. (*Knudsen, supra*, 101 Cal.App.5th at pp. 206–207.) Out of respect for the DMV's interest in public safety on one hand, and drivers' due process rights on the other, the *Knudsen* court found it prudent for reviewing courts to examine the record of each APS hearing to determine whether the hearing officer actually acted as an advocate, thus triggering the intolerable risk of bias. (*Id.* at p. 207.) We consider *Knudsen* to be a sensible application of—not a deviation from—the holding in *DUI Lawyers*.

Third, Romane repeatedly emphasizes a paragraph in *DUI Lawyers* that he interprets to mean a hearing officer's introduction of documents into evidence constitutes advocacy:

> "[T]he DMV argues *Howitt* and *Nightlife Partners* are distinguishable because the 'DMV hearing officer's functions involve considerably less overlap than the functions of the attorneys and hearing officers' in those

cases.[11] We are unpersuaded. Due process protections are not dispensed with simply because the 'DMV hearing officer typically introduces two or three official documents into evidence and decides a limited number of issues.' Rather, 'whenever "due process requires a hearing, the adjudicator must be impartial." ' (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 212.)" (*DUI Lawyers, supra*, 77 Cal.App.5th at p. 532.)

We read this passage to say, assuming a hearing officer actually acts as both an advocate and an adjudicator in an APS hearing, the duality is intolerable even if they only advocate a little. We do not understand *DUI Lawyers* to hold that introducing official documents into evidence *is* advocacy. Our interpretation is reinforced by the fact that, within the same section of the opinion, the court recognized that "the same individual in an administrative agency may be tasked with 'developing the facts and rendering a final decision.' " (*DUI Lawyers, supra*, 77 Cal.App.5th at p. 532, fn. 5, quoting *Today's Fresh Start, supra*, 57 Cal.4th at p. 220; see also *Kazelka, supra,* 109 Cal.App.5th at pp. 1255–1256.)

Finally, Romane seems to suggest that because the written policy (the DSM) and the statute found unconstitutional in *DUI Lawyers* were not amended by the time of his APS hearing—and/or because there was only one hearing officer at his hearing—we must assume Leota advocated. For the

---

11 In *Howitt, supra*, 3 Cal.App.4th 1575, this court held it was permissible for the same county counsel's office to represent the sheriff's department in an administrative hearing and advise the adjudicatory body at the hearing and prepare its decision, provided the prosecuting attorney was screened from the advising attorney. (*Id.* at pp. 1578–1579, 1586.) In *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, the court held it violated due process for the same city attorney to take part in refusing to issue a permit to a business, and then advise the hearing officer tasked with reviewing the propriety of that denial. (*Id.* at pp. 84–85, 94.)

reasons articulated in *Knudsen, supra*, 101 Cal.App.5th at pages 206 to 207, we will not make this assumption. We have examined the record and transcripts of the post-*DUI Lawyers* hearing in this case and determined that Leota understood she should refrain from acting as an advocate, and did not, in fact, advocate. She merely collected and developed the evidence and rendered a decision. Accordingly, there was no denial of Romane's due process rights.

## DISPOSITION

The superior court's order granting Romane's petition for writ of administrative mandate is reversed. The matter is remanded to the superior court with directions to consider, in the first instance, Romane's contention that the evidence does not support the hearing officer's findings that he refused to submit to chemical testing after appropriate admonishment.[12]

The DMV is entitled to costs on appeal.

DATO, J.

WE CONCUR:


IRION, Acting P. J.


KELETY, J.

---

[12] Romane seeks judicial notice of several items: (1) an analysis of APS hearings conducted by the DMV in 1998; (2) the appellate court online docket in *DUI Lawyers*; (3) a notice of APS hearing sent to another driver; (4) the transcript of the APS hearing in that other driver's case; (5) a notice of proposed amendments to California Code of Regulations, title 13, section 115.00 et seq., published in the California Regulatory Notice Register in January 2024 (see fn. 6, *ante*); (6) an Initial Statement of Reasons related to the same amendments; and (7) a notice of appeal filed in another case. Without deciding whether these documents are proper subjects of judicial notice, we deny the request because they are not relevant or necessary to our decision here. (See *People v. Rowland* (1992) 4 Cal.4th 238, 268, fn. 6.)

22